UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Case No. 26-31926-MAB |
| Brian K. Slipka, | Chapter 11 |
| Debtor. | |

**NOTICE OF FILING OF REVISED PLAN OF REORGANIZATION**

On September 14, 2026, the Debtor filed the Plan of Reorganization of Brian K. Slipka (Docket No. 95) (the "Original Plan").

The Debtor hereby files a revised plan, attached hereto as **Exhibit A** (the "Revised Plan").

A redline showing the changes between the Original Plan and the Revised Plan is attached hereto as **Exhibit B**.

Dated: November 3, 2026

**GREENBERG TRAURIG, LLP**
*s/ Carlos A. Alonso Gayon*
Michael B. Fisco (#0175341)
Eric Howe (#0395086)
Carlos A. Alonso Gayon (#0504548)
90 South Seventh Street, Suite 3500
Minneapolis, MN 55402
Telephone: (612) 259-9700
Email: fiscom@gtlaw.com
howee@gtlaw.com
carlos.alonsogayon@gtlaw.com

*Counsel for the Debtor*

# <u>Exhibit A</u>

## Revised Plan

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Case No. 26-31926-MAB |
| Brian K. Slipka, | Chapter 11 |
| Debtor. | |

# PLAN OF REORGANIZATION OF BRIAN K. SLIPKA

**GREENBERG TRAURIG, LLP**
Michael B. Fisco (#0175341)
Eric Howe (#0395086)
Carlos Alonso Gayon (#0504548)
90 South Seventh Street, Suite 3500
Minneapolis, MN 55402
Telephone: (612) 259-9700
Email: fiscom@gtlaw.com
howee@gtlaw.com
carlos.alonsogayon@gtlaw.com

***Counsel to the Debtor***

Dated: November 3, 2026

# Table of Contents

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW ..... 1
- A. Defined Terms. ..... 1
- B. Rules of Interpretation. ..... 8
- C. Computation of Time. ..... 9
- D. Governing Law. ..... 9
- E. Reference to Monetary Figures. ..... 9
- F. Controlling Document. ..... 10

ARTICLE II. ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS ..... 10
- A. Administrative Claims. ..... 10
- B. Professional Fee Claims. ..... 11
- C. Priority Tax Claims. ..... 12
- D. U.S. Trustee Reporting and Fees. ..... 12

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS ..... 12
- A. Classification of Claims and Interests. ..... 12
- B. Treatment of Claims and Interests. ..... 13
- C. Special Provision Governing Unimpaired Claims. ..... 15

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN ..... 15
- A. Post-Confirmation Operations and Activities. ..... 16
- B. Plan Settlement. ..... 16
- C. Fitzl Recovery. ..... 16
- D. Deficiency Claim Payments. ..... 16
- E. Amended Park Loan Documents ..... 18
- F. Effectuating Documents; Further Transactions. ..... 19
- G. Preservation of Causes of Action. ..... 20

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..... 20
- A. Assumption of Executory Contracts and Unexpired Leases. ..... 20
- B. Cure of Defaults for Executory Contracts and Unexpired Leases Assumed. ..... 20
- C. Contracts and Leases Entered Into After the Petition Date. ..... 21

ARTICLE VI. OBJECTIONS TO CLAIMS; DISTRIBUTIONS ..... 21
- A. Objection to Claims. ..... 21
- B. Objection Deadline. ..... 21
- C. Settlement of Objections to Claims. ..... 21
- D. Disallowance of Claims. ..... 21
- E. Procedures for Treating and Resolving Disputed Claims. ..... 21
- F. Delivery of Distributions ..... 22

ARTICLE VII. EFFECT OF PLAN CONFIRMATION AND EFFECTIVE DATE ..... 23
- A. Binding Effect. ..... 23

B. Vesting of Assets. ....................23
**C. Discharge of Claims.** ....................23
**D. Exculpation.** ....................24
**E. Injunction.** ....................24

ARTICLE VIII. CONDITIONS PRECEDENT ....................25
A. Conditions Precedent to Confirmation Date. ....................25
B. Conditions Precedent to the Effective Date. ....................25

ARTICLE IX. RETENTION OF JURISDICTION ....................26

ARTICLE X. MISCELLANEOUS PROVISIONS ....................27
A. Immediate Binding Effect. ....................27
B. Statutory Committee and Cessation of Fee and Expense Payment. ....................27
C. Successors and Assigns ....................27
D. Notices. ....................27
E. Votes Solicited in Good Faith. ....................27
F. Asserting and Curing Default Under the Plan. ....................28
G. Revocation or Withdrawal of the Plan. ....................28
H. Modification of the Plan. ....................28
I. Conflicts. ....................28

# INTRODUCTION

The Debtor proposes this Plan for the resolution of the outstanding claims against him pursuant to chapter 11 of the Bankruptcy Code. Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in Article I.A hereof. Holders of Claims may refer to the Disclosure Statement for a discussion of the Debtor's financial history, assets, liabilities, and projections of future income, as well as a summary and description of the Plan and certain related matters. The Debtor is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

*A. Defined Terms.*

As used in this Plan, capitalized terms have the meanings set forth below.

1. "*Administrative Claim*" means a Claim for costs and expenses of administration of the Estate under sections 503(b), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date of preserving the Estate and conducting the business of the Debtor; (b) Allowed Professional Fee Claims in the Chapter 11 Case; and (c) all fees and charges assessed against the Estate under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911-1930.

2. "*Administrative Claim Bar Date*" means the deadline for filing requests for payment of Administrative Claims, which shall be 30 days after the Effective Date.

3. "*Administrative Costs*" shall mean the total amount of Allowed Professional Fee Claims and U.S. Trustee Fees in the Chapter 11 Case.

4. "*Administrative Cost Allocation*" means 50% of the Administrative Costs.

5. "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code. With respect to any Person that is not a Debtor, the term "Affiliate" shall apply to such Person as if the Person were a Debtor.

6. "*Allowed*" means, with respect to any Claim, except as otherwise *provided* in the Plan: (a) a Claim that is evidenced by a Proof of Claim Filed by the Bar Date (or for which Claim under the Plan, the Bankruptcy Code, or pursuant to a Final Order a Proof of Claim is not or shall not be required to be Filed); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim, as applicable, has been timely Filed; or (c) a Claim Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; *provided* that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be

considered Allowed only if and to the extent that, with respect to such Claim, no objection to the allowance thereof has been interposed by any party in interest within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim, as applicable, shall have been Allowed by a Final Order. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtor and without further notice to any party or action, approval, or order of the Bankruptcy Court. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the Debtor. For the avoidance of doubt: (x) a Proof of Claim Filed after the Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-filed Claim; and (y) the Debtor may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable non-bankruptcy law. "Allow" and "Allowing" shall have correlative meanings.

7. "*Amended Park Loan Documents*" shall mean the Park Loan Documents as amended, as of the Effective Date, as set forth in Article IV.E of this Plan.

8. "*ANB*" means American National Bank.

9. "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532.

10. "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Minnesota.

11. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

12. "*Bar Date*" means the date established by the Bankruptcy Court by which Proofs of Claim must be Filed with respect to such Claims, other than Administrative Claims, Claims held by Governmental Units, or other Claims for which the Bankruptcy Court entered an order excluding the holders of such Claims from the requirement of Filing Proofs of Claim.

13. "*BNC*" means BNC National Bank.

14. "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

15. "*Cash*" means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

16. "*Causes of Action*" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising,

contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

17. "*Chapter 11 Case*" means the case pending for the Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

18. "*Choice*" means Choice Financial Group.

19. "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against the Debtor.

20. "*Class*" means a class of Claims as set forth in Article III hereof pursuant to section 1122(a) of the Bankruptcy Code.

21. "*CM/ECF*" means the Bankruptcy Court's Case Management and Electronic Case Filing system.

22. "*Committee*" means the official committee of unsecured creditors appointed in the Chapter 11 Case.

23. "*Confirmation*" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Case.

24. "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case, within the meaning of Bankruptcy Rules 5003 and 9021.

25. "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court on confirmation of the Plan, pursuant to sections 1128 and 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

26. "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

27. "*Consummation*" means the occurrence of the Effective Date.

28. "*Cure Claim*" means a Claim based upon the Debtor's default on an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtor pursuant to section 365 of the Bankruptcy Code.

29. "*Debtor*" means Brian K. Slipka, individually, and shall also include, where applicable, Brian K. Slipka from and after the Effective Date as reorganized pursuant to this Plan.

30. "*Deficiency Claims*" means the TNT Guaranty Claims, other than the Fitzl Guaranty Claim.

31. "*Deficiency Claim Additional Payment Amount*" means $2,400,000, less the Administrative Cost Allocation.

32. "*Deficiency Claim Additional Payments*" has the meaning given to the term in Article IV.D.2 of the Plan.

33. "*Deficiency Claim Payments*" means the Deficiency Claim Quarterly Payments and the Deficiency Claim Additional Payments.

34. "*Deficiency Claim Quarterly Payments*" has the meaning given to the term in Article IV.D.1 of the Plan.

35. "*Designated Interest Sale*" means (i) a sale or other transfer of the assets of, or the Debtor's ownership interest in, any of the Owned Entities set forth on Schedule 1 hereto or (ii) a distribution to the Debtor from the TCF 401K Supplemental Plan.

36. "*Discharge Conditions*" means payment in full of the Deficiency Claim Payments.

37. "*Discharge Date*" means the date upon which the Court grants the Debtor a discharge upon the satisfaction of the Discharge Conditions.

38. "*Disbursing Agent*" means the Debtor or the Entity or Entities selected by the Debtor to make or facilitate distributions pursuant to the Plan.

39. "*Disclosure Statement*" means the *Disclosure Statement Relating to the Plan of Reorganization of Brian K. Slipka*, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

40. "*Disclosure Statement Order*" means the order of the Bankruptcy Court approving the Disclosure Statement and the procedures for solicitation of the Disclosure Statement.

41. "*Disputed Claim*" means any Claim that is unliquidated, disputed, or contingent and which has not been Allowed by Final Order of a court of competent jurisdiction or by agreement with the Debtor.

42. "*Disputed Claim Reserve Account*" means the account to be established for the benefit of holders, if any, of Deficiency Claims that are Disputed Claims on the Effective Date.

43. "*Distribution*" means a payment or distribution to holders of Allowed Claims or other eligible Entities under the Plan.

44. "*Effective Date*" means the date that is the first Business Day after the Confirmation Date on which (a) no stay of the Confirmation Order is in effect, (b) all conditions precedent to the occurrence of the Effective Date set forth in Article VIII.B of the Plan have been satisfied or

waived in accordance with the Plan, and (c) the Debtor declares the Plan effective. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

45. "*Emprise*" means Emprise Bank.

46. "*Entity*" means any entity, as defined in section 101(15) of the Bankruptcy Code.

47. "*Estate*" means the estate created for the Debtor in his Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

48. "*Executory Contract*" means a contract to which the Debtor is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

49. "*Exculpated Parties*" means, collectively, and in each case, in its capacity as such: (i) the Debtor's professionals; and (ii) the Committee, the Committee's members, and the Committee's professionals.

50. "*File*" or "*Filed*" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

51. "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice.

52. "*Fitzl Guaranty Claim*" means the Claim arising under, or otherwise based on, the Guaranty, dated as of March 31, 2021, executed by the Debtor in favor of the Fitzls.

53. "*Fitzl Recovery*" has the meaning set forth in Article IV.C of the Plan.

54. "*Fitzls*" means Milton Fitzl, Jr. and Jill Fitzl.

55. "*Governmental Unit*" means any governmental unit, as defined in section 101(27) of the Bankruptcy Code.

56. "*Impaired*" means a Class of Claims that is impaired within the meaning of section 1124 of the Bankruptcy Code.

57. "*Judgment Lien*" means any judgment against the Debtor obtained prior to the Petition Date by a holder of a Claim in any state or county that created a Lien on the Debtor's property by operation of law or otherwise.

58. "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

59. "*Lien*" means a lien as defined in section 101(37) of the Bankruptcy Code.

60. "*Miller*" means Mitchell A. Miller, individually and as Trustee of the Mitchell A. Miller Trust U/A/D March 22, 2018.

61. "*Net Proceeds*" means with respect to a Designated Interest Sale, the proceeds available to the Debtor on account of such sale after (i) the payment of all closing costs, (ii) any repayment of obligations of the applicable Owned Entity (including, but not limited to, obligations owed by such Owned Entity to a different Owned Entity) required by such Designated Interest Sale, (iii) repayment in full in Cash or other satisfaction, acceptable to the holder of such obligation in its sole discretion, of any obligation secured by the assets of, or the Debtor's interest in, such Owned Entity, (iv) payment or reserve for tax obligations of the Debtor attributable to the Designated Interest Sale, and (v) payment or reserve for Allowed Administrative Claims, including Professional Fee Claims.

62. "*New Property Owner*" has the meaning given to such term in Article IV.C of the Plan.

63. "*North Loop*" means North Loop Trucking LLC.

64. "*Other Claim*" means any Claim that is not an Administrative Claim, Fitzl Guaranty Claim, Deficiency Claim, Other Guaranty Claim, Park Secured Claim, Priority Tax Claim, or Other Priority Claim.

65. "*Other Guaranty*" means the Debtor's obligations, as borrower, co-borrower or guarantor, for a loan made to or for the benefit of an Owned Entity but, for the avoidance of doubt, shall not include the Debtor's obligations related to the Park Loan Agreement.

66. "*Other Guaranty Claim*" means any Claim on account of an Other Guaranty but, for the avoidance of doubt, shall not include the Park Secured Claim.

67. "*Other Priority Claim*" means any Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

68. "*Owned Entity*" means an Entity, other than TNT, in which the Debtor has a direct or indirect ownership interest.

69. "*Park*" means Park State Bank.

70. "*Park Loan Agreement*" means that certain Commercial Loan Agreement, dated as of December 14, 2023, between the Debtor and Park related to a loan in the original principal amount of $4,000,000.

71. "*Park Loan Documents*" means "Loan Documents," as defined in the Park Loan Agreement.

72. "*Park Secured Claim*" means the Claim of Park under the Park Loan Documents, the full amount of which shall be treated as Secured.

73. "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

74. "*Petition Date*" means June 10, 2026, the date on which the Debtor commenced the Chapter 11 Case.

75. "*Plan*" means this *Plan of Reorganization of Brian K. Slipka*, including the Plan Supplement, which is incorporated herein by reference.

76. "*Plan Supplement*" means the compilation of any documents and forms of documents, agreements, schedules, and exhibits to the Plan to be Filed by the Debtor no later than five days before the Voting Deadline or such later date as may be approved by the Bankruptcy Court on notice to parties in interest.

77. "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

78. "*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class.

79. "*Professional*" means an Entity: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

80. "*Professional Fee Amount*" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses of Professionals that the Professionals estimate they have incurred or will incur in rendering services to the Debtor as set forth in Article II.B.3 of the Plan.

81. "*Professional Fee Claim*" means a Claim by a professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

82. "*Professional Fee Escrow Account*" means an interest-bearing account funded by the Debtor with Cash on the Effective Date in an amount equal to the Professional Fee Amount.

83. "*Proof of Claim*" means a proof of Claim Filed against the Debtor in the Chapter 11 Case by the applicable Bar Date.

84. "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means with respect to a Claim, that the Claim shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

85. "*Schedules*" means, collectively, the schedule of assets and liabilities and statement of financial affairs Filed by the Debtor pursuant to section 521 of the Bankruptcy Code, the official bankruptcy forms, and the Bankruptcy Rules, as they may be amended, modified, or supplemented from time to time.

86. "*Secured*" means any Claim or portion thereof to the extent (a) secured by a Lien on property in which the Debtor has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Final Order or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the interest of the holder of such Claim in the Debtor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) and any other applicable provision of the Bankruptcy Code or (b) Allowed, pursuant to the Plan or a Final Order, as a secured Claim.

87. "*TNT*" means True North Transportation Holding Company and its direct and indirect subsidiaries.

88. "*TNT Guarantees*" means the personal guarantees by the Debtor of loans or other financial accommodations, including, but not limited to, seller financing, made by the TNT Guaranty Creditors to TNT.

89. "*TNT Guaranty Claims*" means Claims of the TNT Guaranty Creditors against the Debtor on account of the TNT Guarantees.

90. "*TNT Guaranty Creditors*" means (i) ANB, BNC, Choice, Emprise, Miller, Tradition, UBT, and the Fitzls and (ii) each of the forgoing's successors and assigns.

91. "*Tradition*" means Tradition Capital Bank.

92. "*UBT*" means Union Bank & Trust Company.

93. "*Unexpired Lease*" means a lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

94. "*Unimpaired*" means a Class of Claims that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

95. "*U.S. Trustee Fees*" means quarterly fees payable pursuant to section 1930(a)(6)(B) of the Judicial Code.

96. "*Voting Deadline*" means the date for submitting ballots to accept or reject the Plan, as established by the Disclosure Statement Order.

*B. Rules of Interpretation.*

For purposes of this Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release,

indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented; (4) any reference to an Entity as a holder of a Claim includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (7) subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (8) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (9) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (10) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (11) all references to docket numbers of documents Filed in the Chapter 11 Case are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Case, unless otherwise stated; and (13) any immaterial effectuating provisions may be interpreted by the Debtor in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

*C. Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

*D. Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Minnesota, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

*E. Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

*F. Controlling Document.*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control. In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims set forth in Article III hereof.

*A. Administrative Claims.*

Unless otherwise agreed to by the holder of an Allowed Administrative Claim and the Debtor, each holder of an Allowed Administrative Claim (other than holders of Professional Fee Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim becomes due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtor in the ordinary course of business after the Petition Date in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the holders of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by such holder and the Debtor; or (5) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

Except for Professional Fee Claims, and unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Debtor no later than the Administrative Claim Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of the occurrence of the Effective Date. Objections to such requests must be Filed and served on the requesting party by the later of (1) 180 days after the Effective Date and (2) 180 days after the Filing of the applicable request for payment of the Administrative Claims, if applicable. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with an order of, the Bankruptcy Court.

Holders of Administrative Claims that are required to File and serve a request for such payment of such Administrative Claims that do not file and serve such a request by the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtor or his property, and such Administrative Claims shall

be deemed discharged as of the Effective Date without the need for any notices, objection, or other action from the Debtor or any action or approval by the Bankruptcy Court.

*B. Professional Fee Claims.*

1. Final Fee Applications and Payment of Professional Fee Claims.

As to Professional Fee Claims not yet Allowed by the Court, all requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than 30 days after the Effective Date. Objections to Professional Fee Claims shall be due 21 days after the Filing of the same. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice. The Debtor shall pay Professional Fee Claims in Cash in the amount the Bankruptcy Court allows, including from the Professional Fee Escrow Account.

2. Professional Fee Escrow Account.

On the Effective Date, the Debtor shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Amount. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals. Such funds shall not be used for any other purpose. The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Debtor from the Professional Fee Escrow Account as soon as reasonably practicable after the later of (i) such Professional Fee Claims becoming Allowed and the (ii) Effective Date. When all such Allowed amounts owing to Professionals have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be paid to the Debtor without any further notice, action or order of the Bankruptcy Court.

3. Professional Fee Amount.

Professionals shall reasonably estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services before and as of the Confirmation Date, and shall deliver such estimate to the Debtor no later than five days before the Confirmation Date; *provided*, *however*, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Filed Professional Fee Claims. If a Professional does not provide an estimate, the Debtor may estimate the unpaid and unbilled fees and expenses of such Professional.

4. Post-Confirmation Fees and Expenses.

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtor shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtor. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtor may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Code.

*C. Priority Tax Claims.*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

*D. U.S. Trustee Reporting and Fees.*

The Debtor shall continue to remit to the office of the United States Trustee all appropriate post confirmation monthly reports for all relevant time periods until the Chapter 11 Case is closed by order of the Bankruptcy Court or converted to a case under chapter 7 of the Bankruptcy Code. The Debtor shall pay to the United States Trustee the appropriate U.S. Trustee Fees for all quarters, including after the Effective Date based on all Plan disbursements, until the Chapter 11 Case is closed by order of the Bankruptcy Court, or converted to a case under chapter 7 of the Bankruptcy Code.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS

*A. Classification of Claims and Interests.*

Except for the Claims addressed in Article II of the Plan, all Claims are classified in the Classes set forth below in accordance with section 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim within the description of such other Classes. A Claim also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims against the Debtor pursuant to the Plan is as follows:

| Class | Claims | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Park Secured Claim | Impaired | Entitled to Vote |
| 3 | Fitzl Guaranty Claim | Impaired | Entitled to Vote |
| 4 | Deficiency Claims | Impaired | Entitled to Vote |
| 5 | Other Guaranty Claims | Impaired | Entitled to Vote |
| 6 | Other Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |

*B. Treatment of Claims and Interests.*

1. Class 1 - Other Priority Claims

(a) *Classification*: Class 1 consists of any Other Priority Claims. *The Debtor does not believe that there are any Allowed Other Priority Claims*.

(b) *Treatment*: On the Effective Date, except to the extent that a holder of an Allowed Other Priority Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Other Priority Claim, each holder of an Allowed Other Priority Claim shall receive Cash in an amount equal to such Allowed Other Priority Claim on the later of:

(i) the Effective Date; and

(ii) the date due in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Other Priority Claim.

(c) *Voting*: Class 1 is Unimpaired under the Plan. holders of Claims in Class 1 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such holders are not entitled to vote to accept or reject the Plan.

2. Class 2 – Park Secured Claim

(a) *Classification*: Class 2 consists of the Park Secured Claim.

(b) *Treatment*: Except to the extent that the holder of the Park Secured Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for the Park Secured Claim, the Park Secured Claim shall be paid in full pursuant to the terms of the Amended Park Loan Documents.

(c) *Voting*: Class 2 is Impaired under the Plan. The holder of the Park Secured Claim is entitled to vote to accept or reject the Plan.

3. Class 3 – Fitzl Guaranty Claim

(a) *Classification*: Class 3 consists of the Fitzl Guaranty Claim.

(b) *Treatment*: In connection with a settlement between the Debtor and the Fitzls, on or after the Effective Date, except to the extent that the holder of the Fitzl Guaranty Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for the Fitzl Guaranty Claim, the holder of the Fitzl Guaranty

Claim shall receive the Fitzl Recovery in accordance with Article IV.C of the Plan.

(c) *Voting*: Class 3 is Impaired under the Plan. The holder of the Fitzl Guaranty Claim is entitled to vote to accept or reject the Plan.

4. Class 4 – Deficiency Claims

(a) *Classification:* Class 4 consists of all Deficiency Claims.

(b) *Treatment:* Except to the extent that a holder of an Allowed Deficiency Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Deficiency Claim, each holder of an Allowed Deficiency Claim shall receive the following:

(i) its Pro Rata share of the Deficiency Claim Quarterly Payments, which shall be made in accordance with Article IV.D.1 of the Plan; and

(ii) its Pro Rata share of the Deficiency Claim Additional Payments, which shall be made in accordance with Article IV.D.2 of the Plan.

(c) *Voting:* Class 4 is Impaired under the Plan. Holders of Allowed Deficiency Claims are entitled to vote to accept or reject the Plan.

5. Class 5 – Other Guaranty Claims

(a) *Classification:* Class 5 consists of all Other Guaranty Claims.

(b) *Treatment:* Except to the extent that a holder of an Allowed Other Guaranty Claim agrees to less favorable treatment, the Other Guarantees shall remain in place and shall not be discharged, released, or modified by the Plan, except as expressly provided herein. Notwithstanding anything in the Other Guarantees or related loan documents to the contrary, (i) the Debtor shall be permitted to make the Deficiency Claim Payments and all other Plan distributions; and (ii) the making of payments expressly required by the Plan shall not, standing alone, constitute a default or event of default under any loan documents governing the Other Guaranty Claims and the holders of the Other Guaranty Claims shall not be entitled to enforce rights or remedies against any Owned Entity or the Debtor solely on account of the Debtor filing the Chapter 11 Case or making payments expressly required by the Plan; provided, however, that other than the limitation on enforcement rights set forth in clause (ii) above, nothing in the Plan, the Confirmation Order, or any document or order related thereto shall impair, limit, delay, or otherwise affect (A) the right of any holder of an Other Guaranty Claim to exercise any right or remedy under its loan documents or applicable law on account of any other default or event of default or

(B) any right, claim, or remedy of a holder of an Other Guaranty Claim against any Entity other than the Debtor, including any Owned Entity, any co-borrower, or any other guarantor, and the liability of each such Entity shall be unaffected by the Plan, the Confirmation Order, and any discharge granted to the Debtor. To the extent an Other Guaranty Claim is secured by a Lien, including a Lien in property of the Estate, such Other Guaranty Claim shall continue after the Effective Date to be secured by such Lien with the same validity, priority, force, and effect that such Lien had immediately prior to the Effective Date, and all rights of the holder thereof under sections 506(a) and 506(b) of the Bankruptcy Code, including the right to postpetition interest, fees, costs, and charges, are preserved. For the avoidance of doubt, a default by an Owned Entity arising from its transfer or distribution of funds or assets to or for the benefit of the Debtor, including to fund payments under the Plan, is not a default on account of the Debtor making payments expressly required by the Plan.

(c) *Voting:* Class 5 is Impaired under the Plan. Holders of Other Guaranty Claims are entitled to vote to accept or reject the Plan.

6. Class 6 - Other Claims

(a) *Classification:* Class 6 consists of all Other Claims.

(b) *Treatment:* On the Effective Date, except to the extent that the holder of an Allowed Other Claim agrees to a less favorable treatment, all Allowed Other Claims shall be Reinstated and otherwise rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code. To the extent an Other Claim is secured by a Lien, including a Lien in property of the Estate, such Other Claim shall continue after the Effective Date to be secured by such Lien with the same validity, priority, force, and effect that such Lien had immediately prior to the Effective Date.

(c) *Voting:* Class 6 is Unimpaired under the Plan. The holders of the Allowed Other Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such holders are not entitled to vote to accept or reject the Plan.

*C. Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtor's rights in respect of any Unimpaired Claims, including, all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

The principal purpose of this Plan is resolution of the TNT Guaranty Claims, estimated at more than $20 million. Subject to the terms set forth below, the Debtor will (i) make $8.4 million

in payments, less the Administrative Cost Allocation, to holders of Allowed Deficiency Claims (Class 4) from the Debtor's continued operation of his non-TNT businesses and monetization of certain non-essential assets and (ii) transfer certain property to the holder of the Fitzl Claim (Class 3). The total recovery for holders of TNT Guaranty Claims is approximately $9 million, less the Administrative Cost Allocation.

The Debtor also is liable for loans and other financial accommodations made to the Owned Entities. The Plan classifies these claims as Other Guaranty Claims (Class 5). The rights, claims, liens, and interests of holders of Other Guaranty Claims will be impaired only to the extent necessary to make payments under the Plan.

*A. Post-Confirmation Operations and Activities.*

The Debtor will manage all affairs of the Owned Entities and work to facilitate the Designated Interest Sales to make required Plan payments. The Debtor will commit the necessary time and resources to manage and develop business opportunities within the Owned Entities, including, but not limited to, the acquisition of new businesses that will provide cash flow to make payments under the Plan. The Debtor also will actively work to raise capital necessary to make the required payments to holders of Allowed Deficiency Claims as soon as reasonably practicable. Until the Debtor makes such required payments to holders of Allowed Deficiency Claims, Megan Slipka will not receive any distributions from True North Diversified, LLC on account of her ownership interest in that Owned Entity.

*B. Plan Settlement.*

As to certain provisions in the Plan that constitute a settlement by the Debtor and one or more parties in interest (collectively, the "Plan Settlement"), the Plan shall be deemed a motion to approve the Plan Settlement pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Plan Settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court the Plan Settlement is fair, equitable, reasonable and in the best interests of the Debtor and his Estate.

*C. Fitzl Recovery.*

On or after the Effective Date, the Debtor shall cause True North Transportation IV Real Estate, LLC to transfer the property located at 1221 North Front Street, New Ulm, Minnesota to the Fitzls or their designee ("New Property Owner"), free and clear of any rights, liens or interests other than customary rights, liens and interests in a real estate sale of a similar type; provided that as of the closing of the sale, the New Property Owner shall have entered into a new 10-year lease with the existing tenant that provides for monthly rent of $10,000.

*D. Deficiency Claim Payments.*

1. Deficiency Claim Quarterly Payments. The Debtor shall make 16 quarterly payments to the holders of Allowed Deficiency Claims in the total amount of $6,000,000 on the terms set forth below (the "Deficiency Claim Quarterly Payments").

(a) The Deficiency Claim Quarterly Payments shall be made in the following amounts:

(i) Quarters 1-4: $250,000 each;

(ii) Quarters 5-8: $350,000 each; and

(iii) Quarters 9-16: $450,000 each.

(b) The first Deficiency Claim Quarterly Payment shall be due on the later of December 31, 2026 and the last Business Day of the month in which the Plan Effective Date occurs. Subsequent Deficiency Claim Quarterly Payments shall be due every three months, on the last Business Date of the applicable month.

2. Deficiency Claim Additional Payments. The Debtor shall make additional payments to the holders of Allowed Deficiency Claims, totaling the Deficiency Claim Additional Payment Amount, on the terms set forth below (the "Deficiency Claim Additional Payments").

(a) If a Designated Interest Sale occurs prior to the payment in full of the Deficiency Claim Additional Payment Amount, then within 30 days after the closing of such sale, the Debtor shall make a Deficiency Claim Additional Payment in the amount of the lesser of (i) 50% of the Net Proceeds of such Designated Interest Sale and (ii) the unpaid portion of the Deficiency Claim Additional Payment Amount, with the remaining Net Proceeds re-invested by the Debtor into one or more of the Owned Entities; provided, however, that for a Designated Interest Sale of the Debtor's interest in North Loop, the percentage in the preceding clause (i) shall be 75% rather than 50%.

(b) If the Debtor receives a distribution from North Loop on account of his indirect ownership interest in North Loop prior to the payment in full of the Deficiency Claim Additional Payment Amount, then within 30 days after such distribution, the Debtor shall make a Deficiency Claim Additional Payment in the amount of the lesser of (i) 100% of such distribution and (ii) the unpaid portion of the Deficiency Claim Additional Payment Amount.

(c) If on the due date for the final Deficiency Claim Quarterly Payment (the "Final Quarterly Payment Due Date") any portion of the Deficiency Claim Additional Payment Amount remains unpaid, then the Debtor will make quarterly payments in the amount of $425,000 until the full Deficiency Claim Additional Payment Amount has been paid. Such quarterly payments shall commence on the last Business Day of the third month after the Final Quarterly Payment Due Date.

(d) For the avoidance of doubt, nothing in this Plan related to a Designated Interest Sale shall modify, override, or abrogate any loan document governing an Other Guaranty Claim or the Park Secured Claim, including

any provision governing the sale, transfer, or encumbrance of collateral, and any such sale shall be subject to the terms of those loan documents.

3. Additional Terms of Deficiency Claim Payments.

(a) Each Deficiency Claim Payment shall be allocated among the holders of Deficiency Claims Pro Rata based upon the Allowed amount of their respective Deficiency Claims.

(b) The Debtor shall be entitled to make the Deficiency Claim Payments prior to the due date thereof, without prepayment penalty or premium of any kind.

*E. Amended Park Loan Documents*

The Debtor and Park shall amend the Park Loan Documents as of the Effective Date according to the terms set forth herein.

1. Maturity. The maturity date shall be the date (the "Park Maturity Date") that is the earlier of (a) 24 months after the Debtor makes the final Deficiency Claim Payment and (b) 24 months after the Final Quarterly Payment Due Date.

2. Interest Rate. Interest will accrue at a variable rate equal to the Wall Street Journal Prime Rate plus 1.50%, adjusted as provided in the Park Loan Documents, but in no event less than 8.50% per annum.

3. Monthly Payments. Between the Effective Date and the Park Maturity Date, the Debtor will make monthly payments, which shall be due on the fifteenth of each month, starting the month after the Effective Date, as follows:

(a) Between the Effective Date and the date on which the Debtor makes the final Deficiency Claim Payment, the monthly payments shall be interest only in the amount of all interest that has accrued as of such payment date on the principal balance of the Park Secured Claim,. The first monthly interest payment shall include a catch up of all unpaid interest that accrued prior to and after the Petition Date; and

(b) Between the date on which the Debtor makes the final Deficiency Claim Payment and the Park Maturity Date, in addition to accrued and unpaid interest, the Debtor shall make monthly principal payments based on a straight-line 24-month amortization schedule, with all remaining amounts due on the Park Maturity Date.

4. Release of Negative Pledge. Park shall release (i) that certain Negative Pledge, dated as of December 14, 2023, with respect to real property owned by True North Transportation III Real Estate, LLC located at 926 N. Front St, New Ulm, MN 56073 (the "TNT III RE Property") and (ii) all of Park's right, title, and interest, if any, in and to the TNT III RE Property and proceeds from the sale of such property.

5. No Bankruptcy Default. The Amended Park Loan Documents shall provide that (i) the Debtor shall be permitted to make the Deficiency Claim Payments and all other Plan distributions; and (ii) the making of payments expressly required by the Plan shall not, standing alone, constitute a default or event of default under the Amended Park Loan Documents and Park shall not be entitled to enforce rights or remedies under the Amended Park Loan Documents solely on account of the Debtor filing the Chapter 11 Case or making payments expressly required by the Plan.

6. Lien. The Lien securing the Park Secured Claim shall continue after the Effective Date to secure the Park Secured Claim with the same validity, priority, force, and effect that such Lien had immediately prior to the Effective Date, and all rights of the holder of the Park Secured Claim under sections 506(a) and 506(b) of the Bankruptcy Code, including the right to postpetition interest, fees, costs, and charges, are preserved. Nothing in the Plan shall release, impair, or otherwise affect Park's rights under Sections 4.6(b) and 4.7 of the Pledge Agreement, dated October 14, 2025, between the Debtor and Park, including the subordination, and assignment to Park, of any claim of the Debtor against True North Sports & Entertainment, LLC.

7. Enforceability. Notwithstanding anything in the Plan to the contrary: (a) the Park Loan Documents, as amended by the Amended Park Loan Documents, shall remain in full force and effect and shall not be discharged, released, or modified by the Plan, the Confirmation Order, or any discharge granted to the Debtor, except as expressly provided in this Article IV.E; (b) other than the limitation set forth in Article IV.E.5, nothing in the Plan, the Confirmation Order, or any document or order related thereto shall impair, limit, delay, or otherwise affect (i) the right of Park to exercise any right or remedy under the Amended Park Loan Documents or applicable law on account of any default or event of default, or (ii) any right, claim, or remedy of Park against any Entity other than the Debtor, including any Owned Entity, mortgagor, pledgor, co-borrower, or guarantor, and the liability of each such Entity shall be unaffected by the Plan, the Confirmation Order, and any discharge granted to the Debtor; and (c) any default by the Debtor under the Plan, including any failure to make a Deficiency Claim Payment when due, that is not cured within the period provided in Article X.F shall constitute an event of default under the Amended Park Loan Documents.

8. Other Terms. Other than as expressly set forth herein, the terms of the Amended Park Loan Documents shall be on substantially the same terms as the existing Park Loan Documents.

*F. Effectuating Documents; Further Transactions.*

On and after the Effective Date, the Debtor is authorized to and may issue, execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

*G. Preservation of Causes of Action.*

In accordance with section 1123(b) of the Bankruptcy Code, the Debtor shall retain and shall have the exclusive right to commence and pursue, as appropriate, any and all Causes of Action, and all defenses, counterclaims, setoffs, and other rights related thereto, whether arising before or after the Petition Date and the Debtor's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.

Certain Creditors obtained judgments against the Debtor before the Petition Date. Such judgments may constitute Liens on certain property owned by the Debtor in the counties where the judgment were filed of record. Pursuant to Article VII B. of the Plan, all property of the Debtor and the Estate are vested back to the Debtor free and clear of these Judgment Liens. If such Judgment Lien Creditors do not voluntarily vacate the Judgment Liens, the Debtor reserves the right to bring an action to remove any cloud on the title to property of the Debtor.

**No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against it as any indication that the Debtor will not pursue any and all available Causes of Action against it. The Debtor expressly reserves all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.**

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

*A. Assumption of Executory Contracts and Unexpired Leases.*

On the Effective Date, except as otherwise provided herein, all Executory Contracts or Unexpired Leases not previously assumed or rejected pursuant to an order of the Bankruptcy Court will be deemed assumed, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, including the Debtor's car lease with ACAR Leasing LTD DBA GMAC

Entry of the Confirmation Order shall constitute an Order approving the assumptions of the Executory Contracts and Unexpired Leases pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Each Executory Contract and Unexpired Lease assumed shall revest in and be fully enforceable by the Debtor in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.

*B. Cure of Defaults for Executory Contracts and Unexpired Leases Assumed.*

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding (1) the amount of any payments to cure such a default, (2) the ability of the Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory

Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption.

*C. Contracts and Leases Entered Into After the Petition Date.*

Contracts and leases entered into after the Petition Date by the Debtor, including any Executory Contracts and Unexpired Leases assumed by the Debtor, will be performed by the Debtor in the ordinary course of business. Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

## ARTICLE VI.
## OBJECTIONS TO CLAIMS; DISTRIBUTIONS

*A. Objection to Claims.*

Any party in interest, including the Debtor, may file objections to Claims (other than Claims that have been previously Allowed or that are Allowed under the Plan). The Debtor is not obligated to object to any Claim, but will nevertheless have standing to object to any such Claim from and after the Effective Date, if he so elects.

*B. Objection Deadline.*

Except as set forth in the Plan with respect to Administrative Claims and Professional Fee Claims, any objections to Claims must be filed no later than the 90 days after the Effective Date.

*C. Settlement of Objections to Claims.*

From and after the Effective Date, the Debtor is authorized to approve compromises of all Claims, including Disputed Claims, and to execute necessary documents and stipulations of settlement, compromise, or release, without further order of the Bankruptcy Court.

*D. Disallowance of Claims.*

Any Claims held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims may not receive any distributions on account of such Claims until such time as any objection to those Claims have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtor by the Entity have been turned over or paid to the Debtor.

*E. Procedures for Treating and Resolving Disputed Claims.*

1. <u>No Distributions Pending Allowance</u>

Distributions shall be made only to holders of Allowed Claims. No holder of a Claim will receive any distribution on account thereof until and to the extent that its Claim becomes an Allowed Claim. To the extent a Claim has not become an Allowed Claim, no payments or Distributions shall be made with respect to all or any portion of such Claim unless and until such Claim has otherwise been Allowed as set forth in the Plan.

In determining the amount of a Pro Rata distribution due to the holders of Allowed Deficiency Claims, the Disbursing Agent may, in its discretion, make the Pro Rata calculation as if all Deficiency Claims were Allowed in the full amount claimed. The Disbursing Agent, in its discretion, may withhold distributions otherwise due hereunder to the holder of a Disputed Claim until the objection deadline, to enable the Debtor or any other party in interest to file a timely objection thereto.

2. Disputed Claim Reserve Account

If any of the Deficiency Claims are Disputed Claims, then on or after the Effective Date, the Disbursing Agent shall create the Disputed Claim Reserve Account for the benefit of the holders of such Disputed Claims pending the allowance thereof. When any distributions are made to holders of Deficiency Claims the Disbursing Agent shall deposit into the Disputed Claim Reserve Account the Pro Rata share of such distribution that is allocated to the Disputed Claims. A holder of a Deficiency Claim will not be entitled to receive or recover any amount in excess of the amount provided in the Disputed Claim Reserve Account to pay such Claim unless permitted by a Final Order.

If a Deficiency Claim that is a Disputed Claim becomes an Allowed Claim, then as promptly as practicable after the date on which such Deficiency Claim becomes an Allowed Claim, and in any event not later than ten (10) Business Days, the Disbursing Agent shall distribute to the holder thereof from the Disputed Claim Reserve Account, the distribution(s) that would have been made to such holder had its Deficiency Claim been an Allowed Claim on the date that distributions were previously made to holders of Allowed Deficiency Claims, without interest, and net of any required withholding of applicable taxes. To the extent any or all of a Deficiency Claim that is a Disputed Claim is disallowed, funds in the Disputed Claim Reserve that were allocated to the disallowed portion of such Disputed Claim shall be distributed Pro Rata to holders of Allowed Deficiency Claims in connection with the next scheduled distribution.

*F. Delivery of Distributions*

Distributions to any holder of an Allowed Claim shall be made at the address of each such holder as set forth on the Proof of Claim filed by such holder (or at the last address of such a holder known to the Disbursing Agent if no Proof of Claim is filed or if the Disbursing Agent has been notified in writing of a change of address). In the event that any distribution to any holder of Allowed Claims is returned as undeliverable, no distribution to such holder shall be made unless and until the Disbursing Agent has determined the then-current address of such holder, at which time such distribution shall be made to such holder without interest; *provided*, *however*, that so long as the Debtor has made reasonable best efforts to locate such holder, such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of 180 days after the date of such distribution. After such date, all unclaimed property or interests in

property shall revert to the Debtor or, to the extent on account of a Deficiency Claim, redistributed to the other holders of Allowed Deficiency Claims, without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial or state escheat, abandoned, or unclaimed property laws to the contrary).

## ARTICLE VII.
## EFFECT OF PLAN CONFIRMATION AND EFFECTIVE DATE

*A. Binding Effect.*

From and after the Effective Date, the Plan shall be binding upon and inure to the benefit of the Debtor, all former, present and future holders of Claims, and their respective successors and assigns, and all other parties in interest in the Chapter 11 Case. Confirmation of the Plan binds each holder of a Claim to the terms and conditions of the Plan, whether or not such holder has accepted the Plan.

*B. Vesting of Assets.*

Except as otherwise provided in this Plan and the Confirmation Order, all property and assets of the Debtor and the Estate shall vest in the Debtor in accordance with the terms of the Plan, in each case free and clear of all Claims, Liens, encumbrances, charges and other interests, including Judgment Liens, other than Liens securing Other Guaranty Claims, Other Claims, or the Park Secured Claim, which Liens that secure the Other Guaranty Claims, Other Claims, or the Park Secured Claim shall remain in full force and effect and shall not be affected, released, extinguished, avoided, subordinated, or otherwise impaired by the Plan or the Confirmation Order. On and after the Effective Date, except as otherwise provided in the Plan, the Debtor may use, acquire, or dispose of property and compromise or settlement any Claim or Causes of Action without supervision or approval by the Bankruptcy Court.

On or after the Effective Date, any Person holding a Judgment Lien shall take all necessary actions to vacate the Judgment Lien, wherever located. If such Person does not voluntarily vacate the Judgment Lien, the Debtor reserves the right to bring an action to remove any cloud on the title to property of the Debtor.

***C. Discharge of Claims.***

**Except as expressly provided in this Plan, all consideration distributed under this Plan will be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims against the Debtor of any nature whatsoever, whether known or unknown, or against the assets or properties of the Debtor that arose before the Effective Date. Except as expressly provided in this Plan, on the Discharge Date (and subject to its occurrence), entry of the Confirmation Order shall be deemed to act as a discharge and release under Bankruptcy Code section 1141(d)(5) of all Claims against the Debtor and his assets, arising at any time before the Effective Date, regardless of whether a proof of Claim was filed, whether the Claim is Allowed, or whether the holder of the Claim votes to accept the Plan or is entitled to receive a Distribution under the Plan; provided, however, that in no event shall occurrence of the Discharge Date discharge the Debtor from any obligations remaining**

**under the Plan as of the Discharge Date. For the avoidance of doubt, a Claim that is Reinstated under the Plan shall not be discharged under the Plan.**

**Upon the satisfaction of the Discharge Conditions, the Debtor shall file a motion requesting an Order granting a discharge pursuant to section 1141(d)(5) of the Bankruptcy Code, which motion (and the discharge) shall be granted upon a showing that the Debtor has met the Discharge Conditions.**

**Notwithstanding the foregoing, nothing contained in the Plan shall (i) discharge the Debtor from any debt excepted from discharge under section 523 of the Bankruptcy Code, as determined by a Final Order, or (ii) limit the Debtor's rights to seek a discharge under section 1141(d)(5)(B) of the Bankruptcy Code.**

***D. Exculpation.***

**Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur any liability related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement or the Plan, except for liability related to any act or omission that is determined in a Final Order to have constituted actual fraud or gross negligence. This exculpation is limited to conduct that occurs on and after the Petition Date and prior to the Effective Date.**

***E. Injunction.***

**Except as otherwise expressly provided in the Plan, including for obligations required to be paid pursuant to the Plan, all Entities who have held, hold, or may hold Claims are permanently enjoined, from and after the Effective Date, from taking any of the following actions against the Debtor or any of his property on account of any such Claim: (1) commencing or continuing in any manner any action or other proceeding; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order; (3) creating, perfecting, or enforcing any encumbrance of any kind; and (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due to the Debtor unless such Entity has Filed a motion requesting the right to perform such setoff on or before the Effective Date; provided, however, that nothing contained herein shall preclude such Entities from exercising their rights pursuant to and consistent with the terms of the Plan, including (a) the retention, perfection, continuation, enforcement, or foreclosure of any Lien securing an Other Guaranty Claim, an Other Claim or the Park Secured Claim, or the exercise of any remedy with respect to the collateral securing the same, in each case in accordance with the applicable loan documents and applicable non-bankruptcy law, or (b) the exercise of any right or remedy against any Entity other than the Debtor, including any Owned Entity, co-borrower, or other guarantor, except as expressly limited by Article III.B.5(b)(ii) of the Plan.**

**Any holder of a Claim with a pending action against the Debtor shall dismiss such action on the Effective Date. The Debtor will cooperate in the filing of a stipulation of dismissal.**

## ARTICLE VIII.
## CONDITIONS PRECEDENT

*A. Conditions Precedent to Confirmation Date.*

The occurrence of the Confirmation Date is subject to the occurrence or waiver by the Debtor of each of the following conditions:

1. The Bankruptcy Court shall have entered a Final Order, in form and substance acceptable to the Debtor, approving the Disclosure Statement;

2. The proposed Confirmation Order shall be in form and substance acceptable to the Debtor; and

3. All of the schedules, documents, supplements, and exhibits to the Plan shall have been filed in form and substance acceptable to the Debtor.

*B. Conditions Precedent to the Effective Date.*

The occurrence of the Effective Date is subject to the occurrence or waiver by the Debtor of each of the following conditions:

1. The Confirmation Date shall have occurred;

2. The Confirmation Order shall have become a Final Order in form and substance acceptable to the Debtor; and

3. All documents that effectuate the Plan (including the Amended Park Loan Documents, in form and substance reasonably acceptable to Park) shall be in form and substance acceptable to the Debtor and shall have been executed and delivered by the parties thereto, and all conditions to the effectiveness of such documents shall have been satisfied or waived as provided therein.

The foregoing conditions to the Effective Date may be waived in whole or in part, but only if waived by the Debtor (and by Park, solely as to the requirement that the Amended park Loan Documents shall be in form and substance reasonable acceptable to Park), without notice to any other parties in interest or the Bankruptcy Court, without any hearing or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan. Without limiting the foregoing, the Effective Date may occur notwithstanding the pendency of an appeal of the Confirmation Order so long as there is no stay in effect and the Debtor so elects in writing. The Effective Date may occur before the expiration of time to take an appeal or to seek reconsideration of the Confirmation Order without the giving of any notice to any objecting party, if the Debtor so elects in writing. The Debtor will file with the Bankruptcy Court, and serve a copy on all parties in interest, a notice of the Effective Date within five (5) Business Days after its occurrence.

# ARTICLE IX.
# RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or relating to, the Chapter 11 Case and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1. allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims;

2. decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3. ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

4. adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

5. adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

6. enter and implement such orders as may be necessary to execute, implement, or consummate the provisions of the Plan;

7. resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan;

8. issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Entity with Consummation or enforcement of the Plan;

9. enter an order concluding or closing the Chapter 11 Case;

10. adjudicate any and all disputes arising from or relating to distributions under the Plan;

11. enforce all orders previously entered by the Bankruptcy Court; and

12. hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE X.
## MISCELLANEOUS PROVISIONS

*A. Immediate Binding Effect.*

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtor and all holders of Claims, all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan.

*B. Statutory Committee and Cessation of Fee and Expense Payment.*

On the Effective Date, the Committee shall dissolve (other than for purposes of filing final fee applications and obtaining Bankruptcy Court approval of same) and members thereof (in their capacities as such) shall be released, exculpated, and discharged from all rights and duties from or related to the Chapter 11 Case.

*C. Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

*D. Notices.*

All notices, requests, and demands to or upon the Debtor to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered, addressed as follows:

Brian Slipka
5495 Carlson Road
Shoreview, Minnesota 55126

with copies to:

Greenberg Traurig, LLP
90 South Seventh Street, Suite 3500
Minneapolis, MN 55402
Attention: Michael Fisco
Eric Howe
Carlos Alonso Gayon

*E. Votes Solicited in Good Faith.*

Upon entry of the Confirmation Order, the Debtor will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code.

*F. Asserting and Curing Default Under the Plan.*

Except as otherwise provided in the Plan, if the Debtor defaults under the provisions of the Plan (as opposed to default under the documentation executed in implementing the terms of the Plan), any holder of a Claim or other party in interest desiring to assert a default shall provide the Debtor and his counsel with written notice of the alleged default. The Debtor shall have thirty (30) days from receipt of written notice to cure the alleged default. If the default is not cured within that time period, any holder of a Claim or other party in interest may then file with the Bankruptcy Court, and serve on the Debtor and his counsel, a motion to compel compliance with the applicable provision of the Plan, or otherwise seeking such remedies as may be available to such party under the Bankruptcy Code or other applicable law. The Bankruptcy Court, on finding a material default, shall issue orders compelling compliance with the pertinent provisions of the Plan or providing such other relief as the Court may order. For the avoidance of doubt, this Article X.F applies only to a default by the Debtor under the provisions of the Plan and does not apply to, and shall not delay, condition, or otherwise affect, the exercise of any right or remedy of a holder of an Other Guaranty Claim, an Other Claim, or the Park Secured Claim under the loan documents governing such Claim or under applicable non-bankruptcy law.

*G. Revocation or Withdrawal of the Plan.*

The Debtor reserves the right to revoke and/or withdraw the Plan at any time before the Confirmation Date. If the Debtor revokes or withdraws this Plan, or if confirmation or the Effective Date of the Plan does not occur, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Entity or to prejudice in any manner the rights of the Debtor or any other Entity in any further proceedings involving the Debtor or any other Entity.

*H. Modification of the Plan.*

The Debtor reserves the right to modify the Plan in writing at any time before the Confirmation Date, provided that (a) the Plan, as modified, meets the requirements of Bankruptcy Code sections 1122 and 1123 and (b) the Debtor shall have complied with Bankruptcy Code section 1125. The Debtor further reserves the right to modify the Plan in writing at any time after the Confirmation Date and before substantial consummation of the Plan, provided that (a) the Plan, as modified, meets the requirements of Bankruptcy Code sections 1122 and 1123, (b) the Debtor shall have complied with Bankruptcy Code section 1125, and (c) the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under Bankruptcy Code section 1129. A holder of a Claim that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

*I. Conflicts.*

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, or any order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.

[*Remainder of Page Intentionally Blank*]

Dated: November 3, 2026

BRIAN K. SLIPKA

______________________________________

**Schedule 1**

North Loop Trucking, LLC

TNT RE Holding, LLC and subsidiaries

Paradygm Commercial Properties, LLC

Paradygm Properties of Twin Cities, LLC

True North Sports & Entertainment, LLC

# <u>Exhibit B</u>

## Redline

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| In re: | Case No. 26-31926-MAB |
| Brian K. Slipka, | Chapter 11 |
| Debtor. | |

---

# PLAN OF REORGANIZATION OF BRIAN K. SLIPKA

**GREENBERG TRAURIG, LLP**
Michael B. Fisco (#0175341)
Eric Howe (#0395086)
Carlos Alonso Gayon (#0504548)
90 South Seventh Street, Suite 3500
Minneapolis, MN 55402
Telephone: (612) 259-9700
Email: fiscom@gtlaw.com
howee@gtlaw.com
carlos.alonsogayon@gtlaw.com

***Counsel to the Debtor***

Dated: ~~**September 14,**~~**November 3,** 2026

# Table of Contents


ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW ... 1

- A. Defined Terms. ... 1
- B. Rules of Interpretation. ... 8
- C. Computation of Time. ... 9
- D. Governing Law. ... 9
- E. Reference to Monetary Figures. ... 9
- F. Controlling Document. ... 9

ARTICLE II. ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS ... 10

- A. Administrative Claims. ... 10
- B. Professional Fee Claims. ... 10
- C. Priority Tax Claims. ... 11
- D. U.S. Trustee Reporting and Fees. ... 12

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS ... 12

- A. Classification of Claims and Interests. ... 12
- B. Treatment of Claims and Interests. ... 12
- C. Special Provision Governing Unimpaired Claims. ... 15

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN ... 15

- A. Post-Confirmation Operations and Activities. ... ~~15~~<u>16</u>
- B. Plan Settlement. ... 16
- C. Fitzl Recovery. ... 16
- D. Deficiency Claim Payments. ... 16
- <u>**E.**</u> <u>**Amended Park Loan Documents**</u> ... <u>**18**</u>
- ~~E~~<u>**F**</u>. Effectuating Documents; Further Transactions. ... ~~17~~<u>19</u>
- ~~F~~<u>**G**</u>. Preservation of Causes of Action. ... ~~17~~<u>19</u>

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ... ~~18~~<u>19</u>

- A. Assumption of Executory Contracts and Unexpired Leases. ... ~~18~~<u>19</u>
- B. Cure of Defaults for Executory Contracts and Unexpired Leases Assumed. ... ~~18~~<u>20</u>
- C. Contracts and Leases Entered Into After the Petition Date. ... ~~18~~<u>20</u>

ARTICLE VI. OBJECTIONS TO CLAIMS; DISTRIBUTIONS ... ~~19~~<u>20</u>

- A. Objection to Claims. ... ~~19~~<u>20</u>
- B. Objection Deadline. ... ~~19~~<u>20</u>
- C. Settlement of Objections to Claims. ... ~~19~~<u>20</u>
- D. Disallowance of Claims. ... ~~19~~<u>20</u>
- E. Procedures for Treating and Resolving Disputed Claims. ... ~~19~~<u>21</u>
- F. Delivery of Distributions ... ~~20~~<u>21</u>

ARTICLE VII. EFFECT OF PLAN CONFIRMATION AND EFFECTIVE DATE ~~20~~22

A. Binding Effect. ~~20~~22
B. Vesting of Assets. ~~21~~22
**C. Discharge of Claims.** ~~21~~22
**D. Exculpation.** ~~21~~23
**E. Injunction.** ~~22~~23

ARTICLE VIII. CONDITIONS PRECEDENT ~~22~~24

A. Conditions Precedent to Confirmation Date. ~~22~~24
B. Conditions Precedent to the Effective Date. ~~22~~24

ARTICLE IX. RETENTION OF JURISDICTION ~~23~~24

ARTICLE X. MISCELLANEOUS PROVISIONS ~~24~~25

A. Immediate Binding Effect. ~~24~~25
B. Statutory Committee and Cessation of Fee and Expense Payment. ~~24~~26
C. Successors and Assigns. ~~24~~26
D. Notices. ~~24~~26
E. Votes Solicited in Good Faith. ~~25~~26
F. Asserting and Curing Default Under the Plan. ~~25~~26
G. Revocation or Withdrawal of the Plan. ~~25~~27
H. Modification of the Plan. ~~25~~27
I. Conflicts. ~~26~~27

# INTRODUCTION

The Debtor proposes this Plan for the resolution of the outstanding claims against him pursuant to chapter 11 of the Bankruptcy Code. Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in Article I.A hereof. Holders of Claims may refer to the Disclosure Statement for a discussion of the Debtor's financial history, assets, liabilities, and projections of future income, as well as a summary and description of the Plan and certain related matters. The Debtor is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

*A. Defined Terms.*

As used in this Plan, capitalized terms have the meanings set forth below.

1. "*Administrative Claim*" means a Claim for costs and expenses of administration of the Estate under sections 503(b), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date of preserving the Estate and conducting the business of the Debtor; (b) Allowed Professional Fee Claims in the Chapter 11 Case; and (c) all fees and charges assessed against the Estate under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911-1930.

2. "*Administrative Claim Bar Date*" means the deadline for filing requests for payment of Administrative Claims, which shall be 30 days after the Effective Date.

3. "*Administrative Costs*" shall mean the total amount of Allowed Professional Fee Claims and U.S. Trustee Fees in the Chapter 11 Case.

4. "*Administrative Cost Allocation*" means 50% of the Administrative Costs.

5. "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code. With respect to any Person that is not a Debtor, the term "Affiliate" shall apply to such Person as if the Person were a Debtor.

6. "*Allowed*" means, with respect to any Claim, except as otherwise *provided* in the Plan: (a) a Claim that is evidenced by a Proof of Claim Filed by the Bar Date (or for which Claim under the Plan, the Bankruptcy Code, or pursuant to a Final Order a Proof of Claim is not or shall not be required to be Filed); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim, as applicable, has been timely Filed; or (c) a Claim Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; *provided* that with respect to a Claim described in clauses (a) and (b) above, such Claim

shall be considered Allowed only if and to the extent that, with respect to such Claim, no objection to the allowance thereof has been interposed by any party in interest within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim, as applicable, shall have been Allowed by a Final Order. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtor and without further notice to any party or action, approval, or order of the Bankruptcy Court. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the Debtor. For the avoidance of doubt: (x) a Proof of Claim Filed after the Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-filed Claim; and (y) the Debtor may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable non-bankruptcy law. "Allow" and "Allowing" shall have correlative meanings.

**7. "*Amended Park Loan Documents*" shall mean the Park Loan Documents as amended, as of the Effective Date, as set forth in Article IV.E of this Plan.**

~~7~~8. "*ANB*" means American National Bank.

~~8~~9. "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532.

~~9~~10. "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Minnesota.

~~10~~11. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

~~11~~12. "*Bar Date*" means the date established by the Bankruptcy Court by which Proofs of Claim must be Filed with respect to such Claims, other than Administrative Claims, Claims held by Governmental Units, or other Claims for which the Bankruptcy Court entered an order excluding the holders of such Claims from the requirement of Filing Proofs of Claim.

~~12~~13. "*BNC*" means BNC National Bank.

~~13~~14. "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

~~14~~15. "*Cash*" means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

~~15~~16. "*Causes of Action*" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or

hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

~~16~~17. "*Chapter 11 Case*" means the case pending for the Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

~~17~~18. "*Choice*" means Choice Financial Group.

~~18~~19. "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against the Debtor.

~~19~~20. "*Class*" means a class of Claims as set forth in Article III hereof pursuant to section 1122(a) of the Bankruptcy Code.

~~20~~21. "*CM/ECF*" means the Bankruptcy Court's Case Management and Electronic Case Filing system.

~~21~~22. "*Committee*" means the official committee of unsecured creditors appointed in the Chapter 11 Case.

~~22~~23. "*Confirmation*" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Case.

~~23~~24. "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case, within the meaning of Bankruptcy Rules 5003 and 9021.

~~24~~25. "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court on confirmation of the Plan, pursuant to sections 1128 and 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

~~25~~26. "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

~~26~~27. "*Consummation*" means the occurrence of the Effective Date.

~~27~~28. "*Cure Claim*" means a Claim based upon the Debtor's default on an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtor pursuant to section 365 of the Bankruptcy Code.

~~28~~29. "*Debtor*" means Brian K. Slipka, individually, and shall also include, where applicable, Brian K. Slipka from and after the Effective Date as reorganized pursuant to this Plan.

~~29~~30. "*Deficiency Claims*" means the TNT Guaranty Claims, other than the Fitzl Guaranty Claim~~, and the Park Unsecured Claim~~.

~~30~~31. "*Deficiency Claim Additional Payment Amount*" means $2,400,000, less the Administrative Cost Allocation.

~~31~~32. "*Deficiency Claim Additional Payments*" has the meaning given to the term in Article IV.~~C~~D.2 of the Plan.

~~32~~33. "*Deficiency Claim Payments*" means the Deficiency Claim~~s~~ Quarterly Payments and the Deficiency Claim~~s~~ Additional Payments.

~~33~~34. "*Deficiency Claim Quarterly Payments*" has the meaning given to the term in Article IV.~~C~~D.1 of the Plan.

~~34~~35. "*Designated Interest Sale*" means (i) a sale or other transfer of the assets of, or the Debtor's ownership interest in, any of the Owned Entities set forth on Schedule 1 hereto or (ii) a distribution to the Debtor from the TCF 401K Supplemental Plan.

~~35~~36. "*Discharge Conditions*" means payment in full of the Deficiency ~~Quarterly~~Claim Payments.

~~36~~37. "*Discharge Date*" means the date upon which the Court grants the Debtor a discharge upon the satisfaction of the Discharge Conditions.

~~37~~38. "*Disbursing Agent*" means the Debtor or the Entity or Entities selected by the Debtor to make or facilitate distributions pursuant to the Plan.

~~38~~39. "*Disclosure Statement*" means the *Disclosure Statement Relating to the Plan of Reorganization of Brian K. Slipka*, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

~~39~~40. "*Disclosure Statement Order*" means the order of the Bankruptcy Court approving the Disclosure Statement and the procedures for solicitation of the Disclosure Statement.

~~40~~41. "*Disputed Claim*" means any Claim that is unliquidated, disputed, or contingent and which has not been Allowed by Final Order of a court of competent jurisdiction or by agreement with the Debtor.

~~41~~42. "*Disputed Claim Reserve Account*" means the account to be established for the benefit of holders, if any, of Deficiency Claims that are Disputed Claims on the Effective Date.

~~42~~**43**. "*Distribution*" means a payment or distribution to holders of Allowed Claims or other eligible Entities under the Plan.

~~43~~**44**. "*Effective Date*" means the date that is the first Business Day after the Confirmation Date on which (a) no stay of the Confirmation Order is in effect, (b) all conditions precedent to the occurrence of the Effective Date set forth in Article VIII.B of the Plan have been satisfied or waived in accordance with the Plan, and (c) the Debtor declares the Plan effective. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

~~44~~**45**. "*Emprise*" means Emprise Bank.

~~45~~**46**. "*Entity*" means any entity, as defined in section 101(15) of the Bankruptcy Code.

~~46~~**47**. "*Estate*" means the estate created for the Debtor in his Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

~~47~~**48**. "*Executory Contract*" means a contract to which the Debtor is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

~~48~~**49**. "*Exculpated Parties*" means, collectively, and in each case, in its capacity as such: (i) the Debtor's professionals; and (ii) the Committee, the Committee's members, and the Committee's professionals.

~~49~~**50**. "*File*" or "*Filed*" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

~~50~~**51**. "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice.

~~51~~**52**. "*Fitzl Guaranty Claim*" means the Claim arising under, or otherwise based on, the Guaranty, dated as of March 31, 2021, executed by the Debtor in favor of the Fitzls.

~~52~~**53**. "*Fitzl Recovery*" has the meaning set forth in Article IV.C of the Plan.

~~53~~**54**. "*Fitzls*" means Milton Fitzl, Jr. and Jill Fitzl.

~~54~~**55**. "*Governmental Unit*" means any governmental unit, as defined in section 101(27) of the Bankruptcy Code.

~~55~~56. "*Impaired*" means a Class of Claims that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**57. "*Judgment Lien*" means any judgment against the Debtor obtained prior to the Petition Date by a holder of a Claim in any state or county that created a Lien on the Debtor's property by operation of law or otherwise.**

~~56~~58. "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

~~57~~59. "*Lien*" means a lien as defined in section 101(37) of the Bankruptcy Code.

~~58~~60. "*Miller*" means Mitchell A. Miller, individually and as Trustee of the Mitchell A. Miller Trust U/A/D March 22, 2018.

~~59~~61. "*Net Proceeds*" means with respect to a Designated Interest Sale, the proceeds available to the Debtor on account of such sale after (i) the payment of all closing costs, (ii) any repayment of obligations of the applicable Owned Entity (including, but not limited to, obligations owed by such Owned Entity to a different Owned Entity) required by such Designated Interest Sale, (iii) repayment **in full in Cash** or other ~~acceptable~~ satisfaction**, acceptable to the holder of such obligation in its sole discretion,** of any obligation secured by the assets of, or the Debtor's interest in, such Owned Entity, ~~and~~ (iv) payment or reserve for tax obligations of the Debtor attributable to the Designated Interest Sale**, and (v) payment or reserve for Allowed Administrative Claims, including Professional Fee Claims**.

~~60~~62. "*New Property Owner*" has the meaning given to such term in Article IV.C of the Plan.

~~61~~63. "*North Loop*" means North Loop Trucking LLC.

~~62~~64. "*Other Claim*" means any Claim that is not an Administrative Claim, Fitzl Guaranty Claim, Deficiency Claim, Other Guaranty Claim, Park **Secured** Claim, Priority Tax Claim, or Other Priority Claim.

~~63~~65. "*Other Guaranty*" means the Debtor's obligations, as borrower, co-borrower or guarantor, for a loan made to or for the benefit of an Owned Entity but, for the avoidance of doubt, shall not include the Debtor's obligations related to the Park Loan Agreement.

~~64~~66. "*Other Guaranty Claim*" means any Claim on account of an Other Guaranty but, for the avoidance of doubt, shall not include the Park **Secured** Claim.

~~65~~67. "*Other Priority Claim*" means any Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

~~66~~68. "*Owned Entity*" means an Entity, other than TNT, in which the Debtor has a direct or indirect ownership interest.

~~67~~69. "*Park*" means Park State Bank.

~~68. "*Park Claim*" means the Claim of Park under the Park Loan Agreement and other Loan Documents (as defined in the Park Loan Agreement).~~

~~69~~70. "*Park Loan Agreement*" means that certain Commercial Loan Agreement, dated as of December 14, 2023, between the Debtor and Park related to a loan in the original principal amount of $4,000,000.

~~70~~71. "*Park* ~~*Secured Claim*" means the portion, if any, of~~*Loan Documents*" means "Loan Documents," as defined in the Park ~~Claim that is Secured~~Loan Agreement.

~~71~~72. "*Park* ~~*Uns*~~*Secured Claim*" means the ~~portion, if any, of~~Claim of Park under the Park ~~Claim that is not~~Loan Documents, the full amount of which shall be treated as Secured.

~~72~~73. "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

~~73~~74. "*Petition Date*" means June 10, 2026, the date on which the Debtor commenced the Chapter 11 Case.

~~74~~75. "*Plan*" means this *Plan of Reorganization of Brian K. Slipka*, including the Plan Supplement, which is incorporated herein by reference.

~~75~~76. "*Plan Supplement*" means the compilation of any documents and forms of documents, agreements, schedules, and exhibits to the Plan to be Filed by the Debtor no later than five days before the Voting Deadline or such later date as may be approved by the Bankruptcy Court on notice to parties in interest.

~~76~~77. "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

~~77~~78. "*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class.

~~78~~79. "*Professional*" means an Entity: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

~~79~~80. "*Professional Fee Amount*" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses of Professionals that the Professionals estimate they

have incurred or will incur in rendering services to the Debtor as set forth in Article II.B.3 of the Plan.

~~80~~81. "*Professional Fee Claim*" means a Claim by a professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

~~81~~82. "*Professional Fee Escrow Account*" means an interest-bearing account funded by the Debtor with Cash on the Effective Date in an amount equal to the Professional Fee Amount.

~~82~~83. "*Proof of Claim*" means a proof of Claim Filed against the Debtor in the Chapter 11 Case by the applicable Bar Date.

~~83~~84. "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means with respect to a Claim, that the Claim shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

~~84~~85. "*Schedules*" means, collectively, the schedule of assets and liabilities and statement of financial affairs Filed by the Debtor pursuant to section 521 of the Bankruptcy Code, the official bankruptcy forms, and the Bankruptcy Rules, as they may be amended, modified, or supplemented from time to time.

~~85~~86. "*Secured*" means any Claim or portion thereof to the extent (a) secured by a Lien on property in which the Debtor has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Final Order or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the interest of the holder of such Claim in the Debtor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) and any other applicable provision of the Bankruptcy Code or (b) Allowed, pursuant to the Plan or a Final Order, as a secured Claim.

~~86~~87. "*TNT*" means True North Transportation Holding Company and its direct and indirect subsidiaries.

~~87~~88. "*TNT Guarantees*" means the personal guarantees by the Debtor of loans or other financial accommodations, including, but not limited to, seller financing, made by the TNT Guaranty Creditors to TNT.

~~88~~89. "*TNT Guaranty Claims*" means Claims of the TNT Guaranty Creditors against the Debtor on account of the TNT Guarantees.

~~89~~90. "*TNT Guaranty Creditors*" means (i) ANB, BNC, Choice, Emprise, Miller, Tradition, UBT, and the Fitzls and (ii) each of the forgoing's successors and assigns.

~~90~~91. "*Tradition*" means Tradition Capital Bank.

~~91~~92. "*UBT*" means Union Bank & Trust Company.

~~92~~93. "*Unexpired Lease*" means a lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

~~93~~94. "*Unimpaired*" means a Class of Claims that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

~~94~~95. "*U.S. Trustee Fees*" means quarterly fees payable pursuant to section 1930(a)(6)(B) of the Judicial Code.

~~95~~96. "*Voting Deadline*" means the date for submitting ballots to accept or reject the Plan, as established by the Disclosure Statement Order.

*B. Rules of Interpretation.*

For purposes of this Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented; (4) any reference to an Entity as a holder of a Claim includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (7) subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (8) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (9) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (10) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (11) all references to docket numbers of documents Filed in the Chapter 11 Case are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Case, unless otherwise stated; and (13) any immaterial effectuating provisions may be interpreted by the Debtor in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

*C. Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

*D. Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Minnesota, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

*E. Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

*F. Controlling Document.*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control ~~in all respects~~. In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims set forth in Article III hereof.

*A. Administrative Claims.*

Unless otherwise agreed to by the holder of an Allowed Administrative Claim and the Debtor, each holder of an Allowed Administrative Claim (other than holders of Professional Fee Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim becomes due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on

liabilities incurred by the Debtor in the ordinary course of business after the Petition Date in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the holders of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by such holder and the Debtor; or (5) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

Except for Professional Fee Claims, and unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Debtor no later than the Administrative Claim Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of the occurrence of the Effective Date. Objections to such requests must be Filed and served on the requesting party by the later of (1) 180 days after the Effective Date and (2) 180 days after the Filing of the applicable request for payment of the Administrative Claims, if applicable. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with an order of, the Bankruptcy Court.

Holders of Administrative Claims that are required to File and serve a request for such payment of such Administrative Claims that do not file and serve such a request by the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtor or his property, and such Administrative Claims shall be deemed discharged as of the Effective Date without the need for any notices, objection, or other action from the Debtor or any action or approval by the Bankruptcy Court.

*B. Professional Fee Claims.*

1. Final Fee Applications and Payment of Professional Fee Claims.

As to Professional Fee Claims not yet Allowed by the Court, all requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than 30 days after the Effective Date. Objections to Professional Fee Claims shall be due 21 days after the Filing of the same. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice. The Debtor shall pay Professional Fee Claims in Cash in the amount the Bankruptcy Court allows, including from the Professional Fee Escrow Account.

2. Professional Fee Escrow Account.

On the Effective Date, the Debtor shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Amount. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals. Such funds shall not be ~~considered property of the Estate of the Debtor.~~**used for any other purpose.** The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Debtor from the Professional Fee Escrow Account as soon as reasonably practicable after the later of (i) such Professional Fee Claims becoming Allowed and the (ii) Effective Date. When all such Allowed amounts owing to Professionals have been paid in full, any remaining

amount in the Professional Fee Escrow Account shall promptly be paid to the Debtor without any further notice, action or order of the Bankruptcy Court.

3. Professional Fee Amount.

Professionals shall reasonably estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services before and as of the Confirmation Date, and shall deliver such estimate to the Debtor no later than five days before the Confirmation Date; *provided*, *however*, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Filed Professional Fee Claims. If a Professional does not provide an estimate, the Debtor may estimate the unpaid and unbilled fees and expenses of such Professional.

4. Post-Confirmation Fees and Expenses.

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtor shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtor. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtor may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Code.

*C. Priority Tax Claims.*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

*D. U.S. Trustee Reporting and Fees.*

The Debtor shall continue to remit to the office of the United States Trustee all appropriate post confirmation monthly reports for all relevant time periods until the Chapter 11 Case is closed by order of the Bankruptcy Court or converted to a case under chapter 7 of the Bankruptcy Code. The Debtor shall pay to the United States Trustee the appropriate U.S. Trustee Fees for all quarters, including after the Effective Date based on all Plan disbursements, until the Chapter 11 Case is closed by order of the Bankruptcy Court, or converted to a case under chapter 7 of the Bankruptcy Code.

# ARTICLE III.
# CLASSIFICATION AND TREATMENT OF CLAIMS

*A. Classification of Claims and Interests.*

Except for the Claims addressed in Article II of the Plan, all Claims are classified in the Classes set forth below in accordance with section 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim within the description of such other Classes. A Claim also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims against the Debtor pursuant to the Plan is as follows:

| Class | Claims | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Park Secured Claim | Impaired | Entitled to Vote |
| 3 | Fitzl Guaranty Claim | Impaired | Entitled to Vote |
| 4 | Deficiency Claims | Impaired | Entitled to Vote |
| 5 | Other Guaranty Claims | Impaired | Entitled to Vote |
| 6 | Other Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |

*B. Treatment of Claims and Interests.*

1. Class 1 - Other Priority Claims

(a) *Classification*: Class 1 consists of any Other Priority Claims. *The Debtor does not believe that there are any Allowed Other Priority Claims.*

(b) *Treatment*: On the Effective Date, except to the extent that a holder of an Allowed Other Priority Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Other Priority Claim, each holder of an Allowed Other Priority Claim shall receive Cash in an amount equal to such Allowed Other Priority Claim on the later of:

(i) the Effective Date; and

(ii) the date due in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Other Priority Claim.

(c) *Voting*: Class 1 is Unimpaired under the Plan. holders of Claims in Class 1 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such holders are not entitled to vote to accept or reject the Plan.

2. Class 2 – Park Secured Claim

(a) *Classification*: Class 2 consists of the Park Secured Claim.

(b) *Treatment*: Except to the extent that the holder of the Park Secured Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for the Park Secured Claim, the ~~holder of the~~ Park Secured Claim shall be paid ~~the Allowed amount, if any, of such Claim based on the value of any Lien securing the Park Secured Claim. Such payment shall be made from (a) the net proceeds of the sale of the collateral securing such Lien or (b)~~**in full** pursuant to the terms of ~~a Final Order determining the value of such Lien. Any portion of the Park Claim that is not an Allowed Park Secured Claim shall be treated as a Deficiency Claim as part of Class 4~~**the Amended Park Loan Documents**.

(c) *Voting*: Class 2 is Impaired under the Plan. The holder of the Park Secured Claim is entitled to vote to accept or reject the Plan.

3. Class 3 – Fitzl Guaranty Claim

(a) *Classification*: Class 3 consists of the Fitzl Guaranty Claim.

(b) *Treatment*: In connection with a settlement between the Debtor and the Fitzls, on or after the Effective Date, except to the extent that the holder of the Fitzl Guaranty Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for the Fitzl Guaranty Claim, the holder of the Fitzl Guaranty Claim shall receive the Fitzl Recovery in accordance with Article IV.C of the Plan.

(c) *Voting*: Class 3 is Impaired under the Plan. The holder of the Fitzl Guaranty Claim is entitled to vote to accept or reject the Plan.

4. Class 4 – Deficiency Claims

(a) *Classification:* Class 4 consists of all Deficiency Claims.

(b) *Treatment:* Except to the extent that a holder of an Allowed Deficiency Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Deficiency Claim, each holder of an Allowed Deficiency Claim shall receive the following:

(i) its Pro Rata share of the Deficiency Claim Quarterly Payments, which shall be made in accordance with Article IV.D.1 of the Plan; and

(ii) its Pro Rata share of the Deficiency Claim Additional Payments, which shall be made in accordance with Article IV.D.2 of the Plan.

(c) *Voting:* Class 4 is Impaired under the Plan. Holders of Allowed Deficiency Claims are entitled to vote to accept or reject the Plan.

5. Class 5 – Other Guaranty Claims

(a) *Classification:* Class 5 consists of all Other Guaranty Claims.

(b) *Treatment:* Except to the extent that a holder of an Allowed Other Guaranty Claim agrees to less favorable treatment, the Other Guarantees shall remain in place and shall not be discharged, released, or modified by the Plan, except as expressly provided herein. Notwithstanding anything in the Other Guarantees or related loan documents to the contrary, (i) the Debtor shall be permitted to make the Deficiency Claim Payments and all other Plan distributions; and (ii) ~~Plan~~**the making of** payments **expressly required by the Plan** shall not ~~be a~~**, standing alone, constitute a default or event of** default under any loan documents governing the Other Guaranty Claims and the holders of the Other Guaranty Claims shall not be entitled to enforce rights or remedies against any Owned Entity or the Debtor **solely** on account of the Debtor filing the Chapter 11 Case or making payments ~~under the Plan~~**expressly required by the Plan; provided, however, that other than the limitation on enforcement rights set forth in clause (ii) above, nothing in the Plan, the Confirmation Order, or any document or order related thereto shall impair, limit, delay, or otherwise affect (A) the right of any holder of an Other Guaranty Claim to exercise any right or remedy under its loan documents or applicable law on account of any other default or event of default or (B) any right, claim, or remedy of a holder of an Other Guaranty Claim against any Entity other than the Debtor, including any Owned Entity, any co-borrower, or any other guarantor, and the liability of each such Entity shall be unaffected by the Plan, the Confirmation Order, and any discharge granted to the**

**Debtor**. To the extent an Other Guaranty Claim is secured by a Lien, including a Lien in property of the Estate, such Other Guaranty Claim shall continue after the Effective Date to be secured by such Lien with the same validity, priority, force, and effect that such Lien had immediately prior to the Effective Date., **and all rights of the holder thereof under sections 506(a) and 506(b) of the Bankruptcy Code, including the right to postpetition interest, fees, costs, and charges, are preserved. For the avoidance of doubt, a default by an Owned Entity arising from its transfer or distribution of funds or assets to or for the benefit of the Debtor, including to fund payments under the Plan, is not a default on account of the Debtor making payments expressly required by the Plan.**

(c) *Voting:* Class 5 is Impaired under the Plan. Holders of Other Guaranty Claims are entitled to vote to accept or reject the Plan.

6. Class 6 - Other Claims

(a) *Classification:* Class 6 consists of all Other Claims.

(b) *Treatment:* On the Effective Date, except to the extent that the holder of an Allowed Other Claim agrees to a less favorable treatment, all Allowed Other Claims shall be Reinstated and otherwise rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code. To the extent an Other Claim is secured by a Lien, including a Lien in property of the Estate, such Other Claim shall continue after the Effective Date to be secured by such Lien with the same validity, priority, force, and effect that such Lien had immediately prior to the Effective Date.

(c) *Voting:* Class 6 is Unimpaired under the Plan. The holders of the Allowed Other Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such holders are not entitled to vote to accept or reject the Plan.

*C. Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtor's rights in respect of any Unimpaired Claims, including, all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

The principal purpose of this Plan is resolution of the TNT Guaranty Claims, estimated at more than $20 million. Subject to the terms set forth below, the Debtor will (i) make $8.4 million in payments, less the Administrative Cost Allocation, to holders of Allowed Deficiency Claims (Class 4) from the Debtor's continued operation of his non-TNT businesses and monetization of certain non-essential assets and (ii) transfer certain property to the holder of the

Fitzl Claim (Class 3). The total recovery for holders of TNT Guaranty Claims is approximately $9 million, less the Administrative Cost Allocation.

The Debtor also is liable for loans and other financial accommodations made to the Owned Entities. The Plan classifies these claims as Other Guaranty Claims (Class 5). The rights, claims, liens, and interests of holders of Other Guaranty Claims will be impaired only to the extent necessary to make payments under the Plan.

*A. Post-Confirmation Operations and Activities.*

The Debtor will manage all affairs of the Owned Entities and work to facilitate the Designated Interest Sales to make required Plan payments. The Debtor will commit the necessary time and resources to manage and develop business opportunities within the Owned Entities, including, but not limited to, the acquisition of new businesses that will provide cash flow to make payments under the Plan. The Debtor also will actively work to raise capital necessary to make the required payments to holders of Allowed Deficiency Claims as soon as reasonably practicable. **Until the Debtor makes such required payments to holders of Allowed Deficiency Claims, Megan Slipka will not receive any distributions from True North Diversified, LLC on account of her ownership interest in that Owned Entity.**

*B. Plan Settlement.*

As to certain provisions in the Plan that constitute a settlement by the Debtor and one or more parties in interest (collectively, the "Plan Settlement"), the Plan shall be deemed a motion to approve the Plan Settlement pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Plan Settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court the Plan Settlement is fair, equitable, reasonable and in the best interests of the Debtor and his Estate.

*C. Fitzl Recovery.*

On or after the Effective Date, the Debtor shall cause True North Transportation IV Real Estate, LLC to transfer the property located at 1221 North Front Street, New Ulm, Minnesota to the Fitzls or their designee ("New Property Owner"), free and clear of any rights, liens or interests other than customary rights, liens and interests in a real estate sale of a similar type; provided that as of the closing of the sale, the New Property Owner shall have entered into a new 10-year lease with the existing tenant that provides for monthly rent of $10,000.

*D. Deficiency Claim Payments.*

1. Deficiency Claim Quarterly Payments. The Debtor shall make 16 quarterly payments to the holders of Allowed Deficiency Claims in the total amount of $6,000,000 on the terms set forth below (the "Deficiency Claim Quarterly Payments").

(a) The Deficiency Claim Quarterly Payments shall be made in the following amounts:

(i) Quarters 1-4: $250,000 each;

(ii) Quarters 5-8: $350,000 each; and

(iii) Quarters 9-16: $450,000 each.

(b) The first Deficiency Claim Quarterly Payment shall be due on the later of December 31, 2026 and the last Business Day of the month in which the Plan Effective Date occurs. Subsequent Deficiency Claim Quarterly Payments shall be due every three months, on the last Business Date of the applicable month.

2. Deficiency Claim Additional Payments. The Debtor shall make additional payments to the holders of Allowed Deficiency Claims, totaling the Deficiency Claim Additional Payment Amount, on the terms set forth below (the "Deficiency Claim Additional Payments").

(a) If a Designated Interest Sale occurs prior to the payment in full of the Deficiency Claim Additional Payment Amount, then within 30 days after the closing of such sale, the Debtor shall make a Deficiency Claim Additional Payment in the amount of the lesser of (i) 50% of the Net Proceeds of such Designated Interest Sale and (ii) the unpaid portion of the Deficiency Claim Additional Payment Amount, with the remaining Net Proceeds re-invested by the Debtor into one or more of the Owned Entities; provided, however, that for a Designated Interest Sale of the Debtor's interest in North Loop, the percentage in the preceding clause (i) shall be 75% rather than 50%.

(b) If the Debtor receives a distribution from North Loop on account of his indirect ownership interest in North Loop prior to the payment in full of the Deficiency Claim Additional Payment Amount, then within 30 days after such distribution, the Debtor shall make a Deficiency Claim Additional Payment in the amount of the lesser of (i) 100% of such distribution and (ii) the unpaid portion of the Deficiency Claim Additional Payment Amount.

(c) If on the due date for the final Deficiency Claim Quarterly Payment (the "Final Quarterly Payment Due Date") any portion of the Deficiency Claim **Additional** Payment Amount remains unpaid, then the Debtor will make quarterly payments in the amount of $425,000 until the full Deficiency Claim Additional Payment Amount has been paid. Such quarterly payments shall commence on the last Business Day of the third month after the Final Quarterly Payment Due Date.

**(d) For the avoidance of doubt, nothing in this Plan related to a Designated Interest Sale shall modify, override, or abrogate any loan document governing an Other Guaranty Claim or the Park Secured Claim, including any provision governing the sale, transfer, or**

**encumbrance of collateral, and any such sale shall be subject to the terms of those loan documents.**

3. Additional Terms of Deficiency Claim Payments.

(a) Each Deficiency Claim Payment shall be allocated among the holders of Deficiency Claims Pro Rata based upon the Allowed amount of their respective Deficiency Claims.

(b) The Debtor shall be entitled to make the Deficiency Claim Payments prior to the due date thereof, without prepayment penalty or premium of any kind.

***E. Amended Park Loan Documents***

**The Debtor and Park shall amend the Park Loan Documents as of the Effective Date according to the terms set forth herein.**

**1. Maturity. The maturity date shall be the date (the "Park Maturity Date") that is the earlier of (a) 24 months after the Debtor makes the final Deficiency Claim Payment and (b) 24 months after the Final Quarterly Payment Due Date.**

**2. Interest Rate. Interest will accrue at a variable rate equal to the Wall Street Journal Prime Rate plus 1.50%, adjusted as provided in the Park Loan Documents, but in no event less than 8.50% per annum.**

**3. Monthly Payments. Between the Effective Date and the Park Maturity Date, the Debtor will make monthly payments, which shall be due on the fifteenth of each month, starting the month after the Effective Date, as follows:**

**(a) Between the Effective Date and the date on which the Debtor makes the final Deficiency Claim Payment, the monthly payments shall be interest only in the amount of all interest that has accrued as of such payment date on the principal balance of the Park Secured Claim,. The first monthly interest payment shall include a catch up of all unpaid interest that accrued prior to and after the Petition Date; and**

**(b) Between the date on which the Debtor makes the final Deficiency Claim Payment and the Park Maturity Date, in addition to accrued and unpaid interest, the Debtor shall make monthly principal payments based on a straight-line 24-month amortization schedule, with all remaining amounts due on the Park Maturity Date.**

**4. Release of Negative Pledge. Park shall release (i) that certain Negative Pledge, dated as of December 14, 2023, with respect to real property owned by True North Transportation III Real Estate, LLC located at 926 N. Front St, New Ulm, MN 56073 (the**

**"TNT III RE Property") and (ii) all of Park's right, title, and interest, if any, in and to the TNT III RE Property and proceeds from the sale of such property.**

**5. No Bankruptcy Default. The Amended Park Loan Documents shall provide that (i) the Debtor shall be permitted to make the Deficiency Claim Payments and all other Plan distributions; and (ii) the making of payments expressly required by the Plan shall not, standing alone, constitute a default or event of default under the Amended Park Loan Documents and Park shall not be entitled to enforce rights or remedies under the Amended Park Loan Documents solely on account of the Debtor filing the Chapter 11 Case or making payments expressly required by the Plan.**

**6. Lien. The Lien securing the Park Secured Claim shall continue after the Effective Date to secure the Park Secured Claim with the same validity, priority, force, and effect that such Lien had immediately prior to the Effective Date, and all rights of the holder of the Park Secured Claim under sections 506(a) and 506(b) of the Bankruptcy Code, including the right to postpetition interest, fees, costs, and charges, are preserved. Nothing in the Plan shall release, impair, or otherwise affect Park's rights under Sections 4.6(b) and 4.7 of the Pledge Agreement, dated October 14, 2025, between the Debtor and Park, including the subordination, and assignment to Park, of any claim of the Debtor against True North Sports & Entertainment, LLC.**

**7. Enforceability. Notwithstanding anything in the Plan to the contrary: (a) the Park Loan Documents, as amended by the Amended Park Loan Documents, shall remain in full force and effect and shall not be discharged, released, or modified by the Plan, the Confirmation Order, or any discharge granted to the Debtor, except as expressly provided in this Article IV.E; (b) other than the limitation set forth in Article IV.E.5, nothing in the Plan, the Confirmation Order, or any document or order related thereto shall impair, limit, delay, or otherwise affect (i) the right of Park to exercise any right or remedy under the Amended Park Loan Documents or applicable law on account of any default or event of default, or (ii) any right, claim, or remedy of Park against any Entity other than the Debtor, including any Owned Entity, mortgagor, pledgor, co-borrower, or guarantor, and the liability of each such Entity shall be unaffected by the Plan, the Confirmation Order, and any discharge granted to the Debtor; and (c) any default by the Debtor under the Plan, including any failure to make a Deficiency Claim Payment when due, that is not cured within the period provided in Article X.F shall constitute an event of default under the Amended Park Loan Documents.**

**8. Other Terms. Other than as expressly set forth herein, the terms of the Amended Park Loan Documents shall be on substantially the same terms as the existing Park Loan Documents.**

~~E~~*F*. *Effectuating Documents; Further Transactions.*

On and after the Effective Date, the Debtor is authorized to and may issue, execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary to effectuate, implement, and further evidence the

terms and conditions of the Plan, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

~~F~~G. *Preservation of Causes of Action.*

In accordance with section 1123(b) of the Bankruptcy Code, the Debtor shall retain and shall have the exclusive right to commence and pursue, as appropriate, any and all Causes of Action, and all defenses, counterclaims, setoffs, and other rights related thereto, whether arising before or after the Petition Date and the Debtor's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.

**Certain Creditors obtained judgments against the Debtor before the Petition Date. Such judgments may constitute Liens on certain property owned by the Debtor in the counties where the judgment were filed of record. Pursuant to Article VII B. of the Plan, all property of the Debtor and the Estate are vested back to the Debtor free and clear of these Judgment Liens. If such Judgment Lien Creditors do not voluntarily vacate the Judgment Liens, the Debtor reserves the right to bring an action to remove any cloud on the title to property of the Debtor.**

**No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against it as any indication that the Debtor will not pursue any and all available Causes of Action against it. The Debtor expressly reserves all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.**

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

*A. Assumption of Executory Contracts and Unexpired Leases.*

On the Effective Date, except as otherwise provided herein, all Executory Contracts or Unexpired Leases not previously assumed or rejected pursuant to an order of the Bankruptcy Court will be deemed assumed, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, including the Debtor's car lease with ACAR Leasing LTD DBA GMAC

Entry of the Confirmation Order shall constitute an Order approving the assumptions of the Executory Contracts and Unexpired Leases pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Each Executory Contract and Unexpired Lease assumed shall revest in and be fully enforceable by the Debtor in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.

*B. Cure of Defaults for Executory Contracts and Unexpired Leases Assumed.*

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date, subject to the limitation

described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding (1) the amount of any payments to cure such a default, (2) the ability of the Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption.

*C. Contracts and Leases Entered Into After the Petition Date.*

Contracts and leases entered into after the Petition Date by the Debtor, including any Executory Contracts and Unexpired Leases assumed by the Debtor, will be performed by the Debtor in the ordinary course of business. Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

## ARTICLE VI.
## OBJECTIONS TO CLAIMS; DISTRIBUTIONS

*A. Objection to Claims.*

Any party in interest, including the Debtor, may file objections to Claims (other than Claims that have been previously Allowed or that are Allowed under the Plan). The Debtor is not obligated to object to any Claim, but will nevertheless have standing to object to any such Claim from and after the Effective Date, if he so elects.

*B. Objection Deadline.*

Except as set forth in the Plan with respect to Administrative Claims and Professional Fee Claims, any objections to Claims must be filed no later than the 90 days after the Effective Date.

*C. Settlement of Objections to Claims.*

From and after the Effective Date, the Debtor is authorized to approve compromises of all Claims, including Disputed Claims, and to execute necessary documents and stipulations of settlement, compromise, or release, without further order of the Bankruptcy Court.

*D. Disallowance of Claims.*

Any Claims held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims may not receive any distributions on account of such Claims until such time as any objection to those

Claims have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtor by the Entity have been turned over or paid to the Debtor.

*E. Procedures for Treating and Resolving Disputed Claims.*

1. No Distributions Pending Allowance

Distributions shall be made only to holders of Allowed Claims. No holder of a Claim will receive any distribution on account thereof until and to the extent that its Claim becomes an Allowed Claim. To the extent a Claim has not become an Allowed Claim, no payments or Distributions shall be made with respect to all or any portion of such Claim unless and until such Claim has otherwise been Allowed as set forth in the Plan.

In determining the amount of a Pro Rata distribution due to the holders of Allowed Deficiency Claims, the Disbursing Agent may, in its discretion, make the Pro Rata calculation as if all Deficiency Claims were Allowed in the full amount claimed. The Disbursing Agent, in its discretion, may withhold distributions otherwise due hereunder to the holder of a Disputed Claim until the objection deadline, to enable the Debtor or any other party in interest to file a timely objection thereto.

2. Disputed Claim Reserve Account

If any of the Deficiency Claims are Disputed Claims, then on or after the Effective Date, the Disbursing Agent shall create the Disputed Claim Reserve Account for the benefit of the holders of such Disputed Claims pending the allowance thereof. When any distributions are made to holders of Deficiency Claims the Disbursing Agent shall deposit into the Disputed Claim Reserve Account the Pro Rata share of such distribution that is allocated to the Disputed Claims. A holder of a Deficiency Claim will not be entitled to receive or recover any amount in excess of the amount provided in the Disputed Claim Reserve Account to pay such Claim unless permitted by a Final Order.

If a Deficiency Claim that is a Disputed Claim becomes an Allowed Claim, then as promptly as practicable after the date on which such Deficiency Claim becomes an Allowed Claim, and in any event not later than ten (10) Business Days, the Disbursing Agent shall distribute to the holder thereof from the Disputed Claim Reserve Account, the distribution(s) that would have been made to such holder had its Deficiency Claim been an Allowed Claim on the date that distributions were previously made to holders of Allowed Deficiency Claims, without interest, and net of any required withholding of applicable taxes. To the extent any or all of a Deficiency Claim that is a Disputed Claim is disallowed, funds in the Disputed Claim Reserve that were allocated to the disallowed portion of such Disputed Claim shall be distributed Pro Rata to holders of Allowed Deficiency Claims in connection with the next scheduled distribution.

*F. Delivery of Distributions*

Distributions to any holder of an Allowed Claim shall be made at the address of each such holder as set forth on the Proof of Claim filed by such holder (or at the last address of such a holder known to the Disbursing Agent if no Proof of Claim is filed or if the Disbursing Agent

has been notified in writing of a change of address). In the event that any distribution to any holder of Allowed Claims is returned as undeliverable, no distribution to such holder shall be made unless and until the Disbursing Agent has determined the then-current address of such holder, at which time such distribution shall be made to such holder without interest; *provided*, *however*, that so long as the Debtor has made reasonable best efforts to locate such holder, such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of 180 days after the date of such distribution. After such date, all unclaimed property or interests in property shall revert to the Debtor or, to the extent on account of a Deficiency Claim, redistributed to the other holders of Allowed Deficiency Claims, without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial or state escheat, abandoned, or unclaimed property laws to the contrary).

## ARTICLE VII.
## EFFECT OF PLAN CONFIRMATION AND EFFECTIVE DATE

*A. Binding Effect.*

From and after the Effective Date, the Plan shall be binding upon and inure to the benefit of the Debtor, all former, present and future holders of Claims, and their respective successors and assigns, and all other parties in interest in the Chapter 11 Case. Confirmation of the Plan binds each holder of a Claim to the terms and conditions of the Plan, whether or not such holder has accepted the Plan.

*B. Vesting of Assets.*

Except as otherwise provided in this Plan and the Confirmation Order, all property and assets of the Debtor and the Estate shall vest in the Debtor in accordance with the terms of the Plan, in each case free and clear of all Claims, Liens, encumbrances, charges and other interests**, including Judgment Liens, other than Liens securing Other Guaranty Claims, Other Claims, or the Park Secured Claim, which Liens that secure the Other Guaranty Claims, Other Claims, or the Park Secured Claim shall remain in full force and effect and shall not be affected, released, extinguished, avoided, subordinated, or otherwise impaired by the Plan or the Confirmation Order**. On and after the Effective Date, except as otherwise provided in the Plan, the Debtor may use, acquire, or dispose of property and compromise or settle**ment** any Claim~~s~~ or Causes of Action without supervision or approval by the Bankruptcy Court.

**On or after the Effective Date, any Person holding a Judgment Lien shall take all necessary actions to vacate the Judgment Lien, wherever located. If such Person does not voluntarily vacate the Judgment Lien, the Debtor reserves the right to bring an action to remove any cloud on the title to property of the Debtor.**

***C. Discharge of Claims.***

**Except as expressly provided in this Plan, all consideration distributed under this Plan will be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims against the Debtor of any nature whatsoever, whether known or unknown, or against the assets or properties of the Debtor that arose before the Effective**

**Date. Except as expressly provided in this Plan, on the Discharge Date (and subject to its occurrence), entry of the Confirmation Order shall be deemed to act as a discharge and release under Bankruptcy Code section 1141(d)(5) of all Claims against the Debtor and his assets, arising at any time before the Effective Date, regardless of whether a proof of Claim was filed, whether the Claim is Allowed, or whether the holder of the Claim votes to accept the Plan or is entitled to receive a Distribution under the Plan~~,~~; provided, however, that in no event shall occurrence of the Discharge Date discharge the Debtor from any obligations remaining under the Plan as of the Discharge Date. For the avoidance of doubt, a Claim that is Reinstated under the Plan shall not be discharged under the Plan.**

**Upon the satisfaction of the Discharge Conditions, the Debtor shall file a motion requesting an Order granting a discharge pursuant to section 1141(d)(5) of the Bankruptcy Code, which motion (and the discharge) shall be granted upon a showing that the Debtor has met the Discharge Conditions.**

**Notwithstanding the foregoing, nothing contained in the Plan shall (i) discharge the Debtor from any debt excepted from discharge under section 523 of the Bankruptcy Code, as determined by a Final Order, or (ii) limit the Debtor's rights to seek a discharge under section 1141(d)(5)(B) of the Bankruptcy Code.**

***D. Exculpation.***

**Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur any liability related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement or the Plan, except for liability related to any act or omission that is determined in a Final Order to have constituted actual fraud or gross negligence. This exculpation is limited to conduct that occurs on and after the Petition Date and prior to the Effective Date.**

***E. Injunction.***

**Except as otherwise expressly provided in the Plan, including for obligations required to be paid pursuant to the Plan, all Entities who have held, hold, or may hold Claims are permanently enjoined, from and after the Effective Date, from taking any of the following actions against the Debtor or any of his property on account of any such Claim: (1) commencing or continuing in any manner any action or other proceeding; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order; (3) creating, perfecting, or enforcing any encumbrance of any kind; and (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due to the Debtor unless such Entity has Filed a motion requesting the right to perform such setoff on or before the Effective Date; provided, however, that nothing contained herein shall preclude such Entities from exercising their rights pursuant to and consistent with the terms of the Plan~~.~~, including (a) the retention, perfection, continuation, enforcement, or foreclosure of any Lien securing an Other Guaranty Claim, an Other Claim or the Park Secured Claim, or the exercise of any remedy with respect to the collateral securing the same, in each case in accordance with the applicable loan documents**

**and applicable non-bankruptcy law, or (b) the exercise of any right or remedy against any Entity other than the Debtor, including any Owned Entity, co-borrower, or other guarantor, except as expressly limited by Article III.B.5(b)(ii) of the Plan.**

**Any holder of a Claim with a pending action against the Debtor shall dismiss such action on the Effective Date. The Debtor will cooperate in the filing of a stipulation of dismissal.**

## ARTICLE VIII.
## CONDITIONS PRECEDENT

*A. Conditions Precedent to Confirmation Date.*

The occurrence of the Confirmation Date is subject to the occurrence or waiver by the Debtor of each of the following conditions:

1. The Bankruptcy Court shall have entered a Final Order, in form and substance acceptable to the Debtor, approving the Disclosure Statement;

2. The proposed Confirmation Order shall be in form and substance acceptable to the Debtor; and

3. All of the schedules, documents, supplements, and exhibits to the Plan shall have been filed in form and substance acceptable to the Debtor.

*B. Conditions Precedent to the Effective Date.*

The occurrence of the Effective Date is subject to the occurrence or waiver by the Debtor of each of the following conditions:

1. The Confirmation Date shall have occurred;

2. The Confirmation Order shall have become a Final Order in form and substance acceptable to the Debtor; and

3. All documents that effectuate the Plan **(including the Amended Park Loan Documents, in form and substance reasonably acceptable to Park)** shall be in form and substance acceptable to the Debtor and shall have been executed and delivered by the parties thereto, and all conditions to the effectiveness of such documents shall have been satisfied or waived as provided therein.

The foregoing conditions to the Effective Date may be waived in whole or in part, but only if waived by the Debtor **(and by Park, solely as to the requirement that the Amended park Loan Documents shall be in form and substance reasonable acceptable to Park)**, without notice to any other parties in interest or the Bankruptcy Court, without any hearing or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan. Without limiting the foregoing, the Effective Date may occur notwithstanding the pendency of an appeal of the Confirmation Order so long as there is no stay

in effect and the Debtor so elects in writing. The Effective Date may occur before the expiration of time to take an appeal or to seek reconsideration of the Confirmation Order without the giving of any notice to any objecting party, if the Debtor so elects in writing. The Debtor will file with the Bankruptcy Court, and serve a copy on all parties in interest, a notice of the Effective Date within five (5) Business Days after its occurrence.

## ARTICLE IX.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or relating to, the Chapter 11 Case and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1. allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims;

2. decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3. ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

4. adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

5. adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

6. enter and implement such orders as may be necessary to execute, implement, or consummate the provisions of the Plan;

7. resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan;

8. issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Entity with Consummation or enforcement of the Plan;

9. enter an order concluding or closing the Chapter 11 Case;

10. adjudicate any and all disputes arising from or relating to distributions under the Plan;

11. enforce all orders previously entered by the Bankruptcy Court; and

12. hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE X.
## MISCELLANEOUS PROVISIONS

*A. Immediate Binding Effect.*

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtor and all holders of Claims, all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan.

*B. Statutory Committee and Cessation of Fee and Expense Payment.*

On the Effective Date, the Committee shall dissolve (other than for purposes of filing final fee applications and obtaining Bankruptcy Court approval of same) and members thereof (in their capacities as such) shall be released, exculpated, and discharged from all rights and duties from or related to the Chapter 11 Case.

*C. Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

*D. Notices.*

All notices, requests, and demands to or upon the Debtor to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered, addressed as follows:

Brian Slipka
5495 Carlson Road
Shoreview, Minnesota 55126

with copies to:

Greenberg Traurig, LLP
90 South Seventh Street, Suite 3500
Minneapolis, MN 55402
Attention: Michael Fisco
Eric Howe
Carlos Alonso Gayon

*E. Votes Solicited in Good Faith.*

Upon entry of the Confirmation Order, the Debtor will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code.

*F. Asserting and Curing Default Under the Plan.*

Except as otherwise provided in the Plan, if the Debtor defaults under the provisions of the Plan (as opposed to default under the documentation executed in implementing the terms of the Plan), any holder of a Claim or other party in interest desiring to assert a default shall provide the Debtor and his counsel with written notice of the alleged default. The Debtor shall have thirty (30) days from receipt of written notice to cure the alleged default. If the default is not cured within that time period, any holder of a Claim or other party in interest may then file with the Bankruptcy Court, and serve on the Debtor and his counsel, a motion to compel compliance with the applicable provision of the Plan, or otherwise seeking such remedies as may be available to such party under the Bankruptcy Code or other applicable law. The Bankruptcy Court, on finding a material default, shall issue orders compelling compliance with the pertinent provisions of the Plan or providing such other relief as the Court may order. **For the avoidance of doubt, this Article X.F applies only to a default by the Debtor under the provisions of the Plan and does not apply to, and shall not delay, condition, or otherwise affect, the exercise of any right or remedy of a holder of an Other Guaranty Claim, an Other Claim, or the Park Secured Claim under the loan documents governing such Claim or under applicable non-bankruptcy law.**

*G. Revocation or Withdrawal of the Plan.*

The Debtor reserves the right to revoke and/or withdraw the Plan at any time before the Confirmation Date. If the Debtor revokes or withdraws this Plan, or if confirmation or the Effective Date of the Plan does not occur, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Entity or to prejudice in any manner the rights of the Debtor or any other Entity in any further proceedings involving the Debtor or any other Entity.

*H. Modification of the Plan.*

The Debtor reserves the right to modify the Plan in writing at any time before the Confirmation Date, provided that (a) the Plan, as modified, meets the requirements of Bankruptcy Code sections 1122 and 1123 and (b) the Debtor shall have complied with Bankruptcy Code section 1125. The Debtor further reserves the right to modify the Plan in writing at any time after the Confirmation Date and before substantial consummation of the Plan, provided that (a) the Plan, as modified, meets the requirements of Bankruptcy Code sections 1122 and 1123, (b) the Debtor shall have complied with Bankruptcy Code section 1125, and (c) the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under Bankruptcy Code section 1129. A holder of a Claim that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

*I.* *Conflicts.*

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, or any order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.

[*Remainder of Page Intentionally Blank*]

Dated: ~~September 14,~~ **November 3,** 2026 BRIAN K. SLIPKA

**Schedule 1**

North Loop Trucking, LLC

TNT RE Holding, LLC and subsidiaries

Paradygm Commercial Properties, LLC

Paradygm Properties of Twin Cities, LLC

True North Sports & Entertainment, LLC